# John T. Ensminger, Appellant, *v.* Eleanor L. Hess.

*Practice, C. P.—Verdict on conflicting evidence.*

Where there is no controversy as to the law, and the trial court in its instructions fairly submits the case to the jury, the court will not disturb a verdict on conflicting evidence.

*Practice, C. P.—Trial—Points—Exceptions—Charge.*

If a trial judge does not answer points presented to him, but hands them back to counsel with the statement that he believes that he has answered the points in his general charge, it is the duty of counsel if he thinks that the points have not been covered by the charge to except to the action of the court, and thus have the points made part of the record. If this is not done the Supreme Court will dispose of the case as though no prayers for instructions had been presented.

The charge of the court in the review of the evidence must not be inaccurate on matters of substance, and must not omit or slur over strong points on either side; but how much detail shall be entered into; how minute the reference to the testimony shall be, and how extended the discussion of it; how far arguments shall be noticed, their true bearing and relevancy pointed out, and the extent to which they are supported by the evidence, must be left largely to the discretion of the trial judge.

Argued May 30, 1899. Appeal, No. 26, May T., 1899, by plaintiff, from judgment of C. P. Dauphin Co., Jan. T., 1899, No. 405, on verdict for defendant. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Issue to determine the validity of a judgment. Before McPHERSON, J.

John T. Ensminger, a judgment and execution creditor, is plaintiff in this issue which was directed by the court to try the validity of a judgment for $7,500, confessed by Frank J. Hess to his wife, Eleanor L. Hess, the defendant in the issue. Frank J. Hess had for many years been engaged in the business of merchandizing in the city of Harrisburg. On February 9, 1879, he married Eleanor L. Leedom, who was then living with her mother in the city of Philadelphia. Her father had died many years before, without leaving any estate whatever. After his death his widow supported herself and daughter by dressmaking, and in the centennial year of 1876, she kept a boarding and lodging house for a period of six months. For a number

of years prior to her marriage, Mrs. Hess kept a small private school.

Upon the trial of the case, it was attempted to be shown that Mrs. Leedom and her daughter had saved from their earnings from $4,000 to $5,000, which it was alleged they brought with them to Harrisburg in cash. Mrs. Leedom removed to Harrisburg in May or June, 1880, and from that time lived with her daughter, Mrs. Hess. After their removal to Harrisburg neither was engaged in any business from which a separate estate could be legally derived. In April, 1883, a house and lot of ground in the city of Harrisburg was conveyed to Mrs. Hess by Martha Chrisman for a consideration of $4,250, of which $2,250 was paid in cash, and a purchase money mortgage given for $2,000. The cash so paid, it was alleged by defendant, represented a part of the moneys brought by her and her mother from Philadelphia at or about the time of her marriage. In 1884, another mortgage of $2,000 was placed upon the property in question, the proceeds of which were used for additions and repairs. At that time the property represented an investment of $6,250 of which $4,000 was in the form of mortgages as stated. On April 2, 1887, Frank J. Hess applied to the United Security Life Insurance and Trust Company, of Philadelphia, for a loan of $10,000, offering as security a mortgage upon the property in question. This loan was granted, and $4,000 of the proceeds were applied to the payment of the two mortgages referred to, $3,500 to the liquidation of a note of Frank J. Hess indorsed by E. B. Mitchell, and the balance appears to have gone into his business. At the time this mortgage was executed a bond for $7,500 was given to his wife by Frank J. Hess. The consideration for this bond, she alleged, was $1,500 in cash, theretofore advanced to him by his wife, and $6,000 alleged to have been borrowed by her from the United Security Company upon the credit of her separate estate.

The consideration for the judgment, which is the subject of controversy in this case, it is alleged, was the bond given to her in 1887.

The court charged in part as follows:

[We have here a judgment note entered of record and an execution issued and certain money made. Now, who is to

have that money will depend upon the answer that you give to the question submitted to you, and the question is, whether the judgment is valid either in whole or in part. It may be good as a whole, or it may be good in part, or it may be altogether bad, and it will be for you to say what answers shall be given to these questions. Is it a good judgment altogether or only in part, and if so, for what part; or is it altogether bad, and therefore to be entirely discarded? Now, if it is invalid in part, that may be from one of two reasons, either it may be too large by mistake, or too large fraudulently. If you should find it to be too large fraudulently—that the parties with intent to defraud other creditors confessed a judgment which they knew or had reason to know was too large—in other words, if there was fraud, so that the amount is not the true amount, and that amount was agreed to with intent to defraud, then the whole judgment is bad, even if the excess should only be small. The parties are bound to deal fairly with each other, and especially when what they do may affect the rights of other creditors; and if they attempt to defraud, even although the attempt only covers a small portion of a claim, much the larger part being good, nevertheless their fraud is punished by taking away from the person who otherwise might have claimed a large sum the whole of his otherwise valid claim. If, however, they simply make an honest mistake, and the amount comes to be too large in that way, the law does not punish such mistake. If they honestly believe that the sum was larger than upon investigation it turns out it should have been, no punishment is inflicted for that mistake, and therefore there could still be a recovery for such amount as is actually due.] [2] Of course, their honest belief would not suffice to make a debt. Parties could not make a debt by belief that a debt actually existed. [If a judgment is confessed for two amounts, it might be good as to one amount and might fail as to the other. So you see the questions upon this branch of the case are to be determined by the application of this rule. Is the judgment for just what it ought to be? If so, the defendant would be entitled to a verdict for the whole amount. If the judgment is too large, then the question is, how much of a verdict, if any, is she entitled to receive. If she has been guilty of any fraud in combination with her husband, intending to defraud other creditors, and if the judgment has

been swollen to an amount which it ought not to have reached, then she is not entitled to a verdict for any amount, and your verdict would be against her. If, however, the judgment is too large by an honest mistake, then she would be entitled to your verdict for whatever has been shown by the testimony to be honestly due.] [4]

Now, to pass to the next step in the case. [Upon whom, the jury will naturally inquire, upon whom does the burden rest to prove the goodness of this judgment? The answer to that is, that the burden of proving that it is for a full consideration rests upon her. This is a contest between wife and the creditor of her husband, and the rule of law is to-day just what it has been for a great many years, unchanged by recent legislation, that a wife in such a contest must prove that her claim rests upon her separate property—her separate estate—which she derived either before she was married, or since she was married, from some other source than her husband. I leave out of the case now, as not being applicable, a gift to her by him at a time when he was solvent. The burden of proof, I repeat, is upon her to show that her debt rests upon her separate estate, and she must prove that to the jury's satisfaction by evidence that is clear and satisfactory and is not equivocal. She must affirmatively show that her separate estate—money derived from some other source—came into her husband's hands. If she traces it into her husband's hands, then the presumption is that he received it as a debt, and not as a gift to him, and he is bound to account to her for it.] [5] It might be shown that she had given it to him, but there is no such evidence in this case; if Mr. Hess received any money from his wife, there is no controversy that he received it as a loan and not as a gift. [A wife may have a separate estate acquired in different ways. She may have acquired it by her own exertions before marriage; it may be given her before marriage, or she may inherit it. After marriage she may still get it from some other source than her husband—by will or by any other way which does not involve him—and if she has a separate estate of her own, she may use that as a basis of credit to acquire other property. If a wife, for example, owns a house, she may mortgage it, and the proceeds of that mortgage are hers just as much as the property is hers. A mortgage is practically a sale of part of the property,

and of course if she sells what is hers, the purchase money is also hers.] [6]  So, if a wife has a separate property, she may use that as a basis of credit, and what she gets is as much hers as the property itself; and she may lend that to her husband with the same safety as if she got it before she was married. That is the burden that rests upon her.

[There is a charge of fraud made in this case, as has been argued to you by the gentleman who has just taken his seat. The burden of proving fraud in this transaction is upon the claimant whom he represents, the plaintiff in this issue, because fraud is not presumed.  The law presumes that people are honest in all transactions, and therefore when a charge of fraud is made it must be proved by the person who makes it, by evidence that is satisfactory to the jury, that a fraud has been committed.  It is not presumed, I repeat, and I need say nothing more on this subject.  If the jury find that this judgment has been manufactured, is fraudulent either in whole or in part, confessed in order to defraud, then as a matter of course the judgment is entirely void.] [3]  These are the rules that the jury must consider in determining the questions submitted to them.

Passing to another branch of the case, namely, the extent of the defendant's claim, we find that it is limited to two items. She herself so limited it, and the husband limited it also in his testimony to these items.  She declares that the consideration for this judgment is the sum of $1,500 which she loaned to her husband, not all at one time, but at different times within about eighteen months or so after they were married, and a further sum of $6,000 which she afterwards borrowed in the year 1887 upon a mortgage resting upon her separate property on North Sixth street.  Those are the two items which she says make up this amount of $7,500, and to those two items therefore her claim must be restricted.  Her claim cannot be enlarged beyond the point which she herself has fixed.

[Now you come to the consideration of where this money comes from.  Remembering the rule that I stated a few minutes ago, that it is her duty to prove to you by clear and satisfactory evidence that this money came from her separate estate, the jury must inquire where she received this money.  You recall her testimony upon this subject concerning her life in Phil-

adelphia, the pursuits in which her mother and herself were engaged, the extent to which these businesses were profitable, the amount of money which she says she earned, the various sources from which she says she derived it, and finally the amount of money which she says they both had acquired at the time she was married. Her mother came to Harrisburg shortly afterwards—in June of that year—and the defendant's testimony is that at that time their common stock of property amounted to between $4,000 and $5,000, which she and her mother had saved. The jury must consider all the testimony on this subject, and they must determine what is the fact, because it is very important to consider this testimony. It is the starting point of the transaction, because if she did not have the money, and if her mother did not have the money, as a matter of fact they could not have had it to lend to Mr. Hess. Therefore, I repeat, you must consider all the testimony on this point, which I shall not further detail, and decide how much money she had of her own when she came to Harrisburg, and how much her mother had.] [7] I speak of her mother, because it is said her mother furnished some of the money, perhaps all of it, for the purchase of the house on Sixth street; some of it at least, if not all. That is the next point. The jury must decide from what source the consideration came for the Sixth street property. The mother could advance the money for her daughter, and if she did so and allowed the deed to be taken in her daughter's name, that would be equivalent, for present purposes at least, to a gift to her daughter, and the property would then become the separate property of Mrs. Hess. She could use that, therefore, as a basis of credit, and, therefore, she could mortgage it and with the proceeds of that mortgage do what she pleased. She could lend it to her husband if she pleased. [You have heard the evidence with regard to the mortgages on this property. There was a purchase money mortgage which came to E. B. Mitchell, another mortgage given to the Commonwealth Guarantee. Trust and Safe Deposit Company, which went into E. B. Mitchell's hands by assignment, and finally a third mortgage for collateral security to E. B. Mitchell, who was an indorser for Mr. Hess, and this mortgage was given to protect him. These mortgages continued to rest on the property until 1887, when a

new mortgage of $10,000 was negotiated and put upon the property. Mr. Mitchell's two mortgages, representing the $4,000, were paid off out of the proceeds of that $10,000, and it is said that the remainder went into Mr. Hess's hands as a loan by his wife to him. You must consider what the testimony was and decide what facts it establishes. Did this money go into Mr. Hess's hands as a loan? Did his wife lend it to him? If she did, it is a very important fact. He testifies he used $3,500 to pay the note upon which Mr. Mitchell was indorser, and thereupon the mortgage which Mr. Mitchell held as indorser was satisfied, and the remainder of the money was used in his business. The jury must determine what are the facts in this connection. They must determine how much money was obtained in this transaction and where it went. If the money to the amount of $6,000 was loaned to her husband, it was money raised upon the credit of the separate estate of the wife, and it is therefore money which she could claim as her separate estate.] [8]

Now, so far as any of her money was used to pay the mortgages upon her property, that would not afford any basis for the consideration in the note in question. That would simply be used to pay her own debt—as was properly argued—and so far as $4,000 was concerned, that would be simply paying her own debt. Now, if this money did not go to pay her husband's debts—this $6,000, I mean—if it was not loaned to him for the purposes of the business, the payment of his debts, of course there is no foundation, as far as this sum goes, for this note in suit, and this sum could not be used as a consideration, either in whole or in part, for the judgment note in question.

In connection with the testimony concerning the amount of money which she says she loaned to her husband, the jury should consider all the testimony in the case concerning her income and expenditures and the income and expenditures of the family during the period we have been investigating. All this testimony is relevant, not because it directly bears upon the consideration of this note, but because it may help the jury in their inquiry whether she had the money to lend. The more one spends, the less one has for other purposes; and vice versa, the less one gets, the less one has to lend; and for that reason the testimony was introduced in this case to show what money

was coming in and what was going out. All these matters are for the jury to consider, and I submit them without further word, except to add this concerning her earnings. [There is some testimony about her earnings after marriage. They do not seem to be very considerable, but to some extent she testified they existed. The jury will consider how far she added to her income by earnings from her own exertions. It may be true that for a portion of the time they might not be legally hers, if her husband had chosen to claim them. But if her husband in good faith allowed her to take these earnings and use them as she pleased, we say she had a right to use them as she pleased.] [9]

This brings us to the final step in the case. [Has she been repaid any of the money she may have loaned to her husband? Of course, if she loaned him none, there was none to repay. If she loaned him part, has that part been repaid or any of it, and if so, to what extent? If she loaned him the whole, has that been repaid in whole or in part? If she has been repaid, as a matter of course she is not entitled to anything more. If she has been paid in part, she is entitled to a verdict for what still remains unpaid.] [10]

The jury will take the whole testimony and consider the case in the light of the instructions just given by the court. I think I have given all the instructions necessary, except upon the disputed point in regard to the husband's declaration that he was not indebted, or that there were no other judgments out against him, except the Strawbridge & Clothier judgment. There is some testimony upon that point, and the jury has heard it. The jury must consider whether he did or did not make these declarations. It was admitted, not as affecting the wife's claim, because what he said could not affect her claim, but it was admitted as evidence bearing upon the degree of credit to be given to his testimony, because that would affect the consideration to be given to his testimony. If a witness is discredited, very often a jury throws out that testimony altogether, and determines the case upon the other evidence submitted to their consideration; and that is the point of view upon which this evidence was admitted, namely, bearing upon Mr. Hess's credibility as a witness, and only in such aspect could it be considered. If you decide his testimony is not reliable, you will discard it and consider the case upon the other testimony. If

you, however, consider that what he said upon that subject is true and correct, then the attack upon his credit has failed, and the jury will consider the testimony for what it is worth.

You understand, gentlemen, what your verdict will be. Perhaps I did not explain that sufficiently. The form of this issue, I think, is a mistake. I think Mrs. Hess ought to have been the plaintiff. If you find a verdict in favor of the judgment, if you find that Mrs. Hess's judgment is good, then you will find a verdict in favor of the defendant for such amount as you find it to be good for. If it is good altogether, then say you find in favor of defendant. If you find it to be good in part, you find in favor of the defendant for so much. If you find the judgment is bad altogether, then you find in favor of the plaintiff. Mr. Ensminger is plaintiff and Mrs. Hess defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1) that the charge was not a fair and adequate presentation of the case; (2–10) above instructions, quoting them.

*Robert Snodgrass*, with him *James I. Chamberlin*, for appellant.—We do not say that the case should have been taken from the jury. It was no doubt the duty of the court to submit it to their determination, but at the same time such submissions, we respectfully submit, should have been accompanied by such instructions as would have directed the jury's attention to the general and unreliable character of the evidence adduced: Earl v. Champion, 65 Pa. 191; Tietz v. Philadelphia Traction Co., 169 Pa. 516.

*John A. Herman* and *William M. Hain*, for appellee.—Error cannot be assigned to the omission of a judge to charge in a particular way unless his attention was called to it by a special request: Mineral R. R. & Mining Co. v. Auten, 188 Pa. 568; Kehoe v. Traction Co., 187 Pa. 474; Penna. R. Co. v. Coon, 111 Pa. 431; Bain v. Doran, 54 Pa. 126; Garsed v. Turner, 71 Pa. 58; Ott v. Oyer, 106 Pa. 7.

The practice of excepting to the whole charge without designating a specific error is a bad one, and should be repressed by the lower court: Ry. Co. v. Com., 66 Pa. 73; Walker v. Hum-

bert, 55 Pa. 407; R. R. Co. v. Getz, 113 Pa. 214; Cooper v. Atimus, 62 Pa. 490; Ins. Co. v. Isett, 74 Pa. 176; Dennis v. Alexander, 3 Pa. 50; Wertz v. May, 21 Pa. 275.

It is improper to assign as error isolated sentences wrenched from their position in a general charge: Com. v. Zappe, 153 Pa. 498.

Where specific instructions are desired, they should be applied for in the usual way. Alleged errors of omission to charge are not sufficient cause for reversal: Grantz v. Price, 130 Pa. 415; Arthurs v. Bascom, 19 Pitts. Legal Jour. 9; Serfass v. Dreisbach, 141 Pa. 142; R. R. Co. v. Com., 3 Brewster, 355; Ins. Co. v. Buckley, 4 W. N. C. 313; Newman v. Edwards, 34 Pa. 32; Burkholder v. Stahl, 58 Pa. 371; Borham v. Davis, 146 Pa. 77.

OPINION BY MR. CHIEF JUSTICE STERRETT, July 19, 1899:

In this feigned issue to determine the validity of a judgment confessed by Frank J. Hess in favor of his wife who is the defendant in the issue, the only subject of complaint is the manner in which the learned trial judge submitted the case to the jury. In their brief the learned counsel for plaintiff state: "We do not say that the case should have been taken from the jury. It was no doubt the duty of the court to submit it to their determination, but, at the same time, such submission . . . . should have been accompanied by such instructions as would have directed the jury's attention to the general and unreliable character of the evidence adduced."

It nowhere appears in the record that the learned trial judge's attention was called to the alleged insufficiency of his presentation of the case to the jury; but it is stated, doubtless correctly, that points for charge were presented, and "the learned trial judge, at the close of the general charge, returned the points, so submitted, to counsel, stating that he believed he had answered the points in his general charge; consequently no points appear upon the record."

We are not warranted in drawing from this statement the inference that any of the matters now complained of were distinctly embodied in any of said points, nor do we understand that we are expected to do so. If any of said points were not covered by the general charge, or were insufficiently answered

therein, it was the privilege as well as the duty of counsel to
except thereto, and thus have them made part of the record.
We must therefore dispose of this case as though no prayers
for instructions, etc., had been presented.

It is frankly conceded that upon the evidence properly before
the jury the case was one that the court was bound to submit
to them for their determination. The only question therefore
is whether it was fairly and adequately submitted. On that
subject the language of our Brother MITCHELL, in Borham v.
Davis, 146 Pa. 72, is appropriate. Referring to the alleged
unfairness and inadequacy of the charge in that case, he said:
" In the review of the evidence it must not be inaccurate on
matters of substance, and it must not omit or slur over the
strong points on either side. But how much detail shall be
entered into; how minute the reference to the testimony shall
be, and how extended the discussion of it; how far arguments
shall be noticed, their true bearing and relevancy pointed out,
and the extent to which they are supported by the evidence,
etc., must be left largely to the discretion of the presiding judge.
He is generally in a better position to estimate the requirements
of the case with the jury in hand than we can possibly be; and
unless we can see clearly that the jury may have been misled
or turned aside from the true issue, general exceptions of the
nature of the present are not to be sustained."

A careful consideration of the charge as a whole, and in all
its bearings, has satisfied us that it is neither unfair, inaccu-
rate or inadequate. There was no controversy as to the law
applicable to the facts which the evidence tended to prove, and
it was clearly and accurately stated to the jury. The disputed
questions were of fact, which it was the duty of the court to
submit to the jury for their determination, and they were
accordingly submitted on sufficient evidence, and with instruc-
tions of which the plaintiff has no just reason to complain.
His view of the case was fairly and adequately presented, and
his rights carefully guarded. If the evidence of the defendant
was believed, she had given an adequate consideration for the
judgment in controversy, and the jury being the exclusive
judges of the credibility of witnesses were warranted in find-
ing as they did.

It is unnecessary to consider the specifications of error in

detail. We find nothing in the record to justify us in sustaining either of them. They are therefore dismissed and the judgment is affirmed.