COMMONWEALTH of Pennsylvania, Appellee

v.

Thomas J. HUDDLESTON, Appellant.

Superior Court of Pennsylvania.

Submitted April 2, 2012.

Filed Sept. 21, 2012.

Thomas M. Dickey, Altoona, for appellant.

Kelley Gillette–Walker, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, J., and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:

Thomas J. Huddleston (Appellant) appeals from the October 11, 2000 judgment of sentence of life imprisonment following his convictions for second-degree murder, conspiracy to commit second-degree murder, and robbery.[1] We affirm.

The facts and procedural history of this case were summarized by another panel of this Court as follows.

This case arises out of the robbery and murder of David Camargo. [Appellant] and Heath Quick agreed to shoot Camargo and steal his marijuana, any money he had, and his car. [Appellant] and Quick set up a meeting with Camargo at a K–Mart in State College to buy some drugs. After meeting at the K–Mart, Quick, Camargo and [Appellant] agreed to drive to a new meeting spot. Quick got into the car with Camargo and followed [Appellant], who was driving his girlfriend's vehicle, to the new meeting spot in Black Moshannon State Park. After entering the park, [Appellant] stopped his vehicle and got out to urinate. It was at this time that Quick shot and killed Camargo. [Appellant] and Quick then took Camargo's body and placed it into [Appellant's] trunk. [Appellant] drove his girlfriend's vehicle with Camargo's body in the trunk and Quick drove Camargo's vehicle. The two men drove to a place called "Devil's Elbow," where they threw Camargo's body down an embankment. When Camargo's body did not go far enough down, [Appellant] went down the em-

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S. §§ 2502(b), 903(a), and 3701(a)(1), respectively. We note that in addition to the life sentence for second-degree murder, Appellant was also sentenced to 10 to 20 years' imprisonment, concurrently, for the conspiracy and robbery convictions. The remaining convictions, not listed herein, merged for sentencing purposes.

bankment and pushed the body further down. [Appellant] and Quick split up the marijuana and money they took from Camargo. The police eventually arrested both [Appellant] and Quick. [Appellant] gave a statement to the police detailing his role in Camargo's death.

The Commonwealth charged [Appellant] with murder of the first degree, conspiracy to commit murder of the first degree, murder of the second degree, conspiracy to commit murder of the second degree, robbery, and conspiracy to commit robbery. A jury trial was held on October 9 through 11, 2000. At the conclusion of the trial, the jury found [Appellant] guilty of murder of the second degree, robbery and conspiracy to commit murder of the second degree and robbery. The Honorable Thomas King Kistler sentenced [Appellant] to life in prison. [Appellant] filed post-trial motions on October 18, 2000, raising various errors. On March 13, 2001, Judge Kistler denied the motions. On April 12, 2001, [Appellant] filed a notice of appeal. On April 18, 2001, Judge Kistler ordered [Appellant] to file a Pa. R.A.P. 1925(b) statement. On May 8, 2001, Judge Kistler had not received a Rule 1925(b) statement from [Appellant] or his attorney. Accordingly, he found this failure to evidence a waiver of all of [Appellant's] claims. [Appellant] through his attorney filed a Rule 1925(b) statement that same day. On June 28, 2002, this Court agreed with Judge Kistler's finding and found all objections to the judgment of sentence to be waived. *See Commonwealth v. Huddleston*, 806 A.2d 461 (Pa.Super.2002) (Table). Our Supreme Court denied allocatur on April 22, 2003. *See Commonwealth v. Huddleston* [573 Pa. 664], 820 A.2d 703 (Pa. 2003).

*Commonwealth v. Huddleston,* 943 A.2d 314 (Pa.Super.2007) (Table).

Appellant hired new counsel no later than December of 2003. It was not until March 13, 2006, however, that counsel filed on Appellant's behalf a petition pursuant to the Post Conviction Relief Act (PCRA),[2] seeking reinstatement of his direct appeal rights. Judge Kistler granted the petition and reinstated Appellant's appeal rights over the Commonwealth's objection to the timeliness of the PCRA petition. On Appellant's *nunc pro tunc* appeal, this Court agreed with the Commonwealth and quashed the appeal, determining that the PCRA court lacked jurisdiction to grant Appellant PCRA relief. *See id.* Counsel did not inform Appellant of the outcome of his appeal until September 12, 2008, long after the time had expired for Appellant to seek review by our Supreme Court.

Appellant filed a second PCRA petition on September 22, 2008, again seeking reinstatement of his direct appeal rights based upon prior PCRA counsel's ineffectiveness in failing to file a timely petition for relief under the PCRA. Appellant claimed that the petition satisfied a timeliness exception because it was filed within 60 days of discovering that prior PCRA counsel effectively abandoned him. The Commonwealth again challenged the PCRA court's jurisdiction to entertain an untimely petition.

On May 9, 2011, the PCRA court held an evidentiary hearing concerning the allegations of Appellant's petition. On August 22, 2011, Judge Kistler held another hearing to resolve the remaining factual issues concerning the timeliness of Appellant's second PCRA petition. Based upon the evidence offered, Judge Kistler found that Appellant hired his first PCRA counsel "shortly after the PCRA clock began to

**2.** 42 Pa.C.S. §§ 9541–9546.

run, yet the attorney waited over two years to file a PCRA petition[,]" which constituted attorney abandonment as discussed in *Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007). PCRA Court Opinion, 9/16/2011, at 5. Because Appellant filed his second PCRA petition within 60 days of discovering the abandonment, Judge Kistler entered an order reinstating Appellant's direct appeal rights. *Id.* at 10.

Appellant filed a timely notice of appeal from the October 11, 2000 judgment of sentence, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925. Appellant presents two questions for our consideration.

    1. Whether the court below abused its discretion in admitting the statements of the principal in the killing that were made to a police officer during a traffic checkpoint stop that occurred after the killing, which statements had been objected-to as hearsay and not relevant?

    Whether the court below erred in finding that the evidence sufficed to convict [Appellant] of second-degree murder, conspiracy/second-degree murder, and offenses merged or included, in that the evidence failed to prove a killing in the perpetration of a felony, aid or agreement for complicity, a plan or shared intent for conspiracy, or the intent for conspiracy?

Appellant's Brief at 7.

    Before we address the merits of Appellant's questions, we consider the Commonwealth's argument that the PCRA court erred in reinstating Appellant's direct appeal rights. We begin by examining the law concerning attorney abandonment as a basis for invoking a timeliness exception to the PCRA.

Section 9545(b)(1)(ii) of the PCRA provides that a PCRA petition must be filed within one year of the date on which the judgment of sentence became final, unless the petitioner alleges and proves that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). If the petitioner so alleges and proves, the petition will not be dismissed as untimely if it was "filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

In *Bennett, supra,* our Supreme Court found that attorney abandonment may constitute a factual basis for the section 9545(b)(1)(ii) timeliness exception. In that case, the appeal from the dismissal of Bennett's first, timely, PCRA petition was dismissed by this Court because counsel failed to file a brief. 930 A.2d at 1266. Bennett filed a second PCRA petition alleging that he had attempted to find out the status of his PCRA appeal, did not learn that it was dismissed due to counsel's failure to file a brief until he received a letter from this Court explaining what had transpired,[3] and filed a new PCRA petition within 60 days of so learning. *Id.* at 1274. The PCRA court granted Bennett leave to appeal the dismissal of his first PCRA petition *nunc pro tunc,* but this Court quashed the appeal as untimely. Our Supreme Court reversed this Court, holding that Bennett sufficiently alleged that he had been abandoned by counsel on his first PCRA petition and acted with due diligence in ascertaining the fact of the abandonment to satisfy the timeliness exception of the PCRA found at section 9545(b)(1)(ii). *Id.* at 1272.

---

**3.** Our Supreme Court rejected the notion that the fact that this Court's orders are a matter of public record made it impossible for them to be "unknown" to a PCRA petitioner at the time they are filed. *Bennett, supra* at 1275.

In *Commonwealth v. Watts*, 611 Pa. 80, 23 A.3d 980 (2011), Watts's direct appeal was dismissed in 2002 because counsel failed to file a docketing statement. Within 60 days of learning of the dismissal in August 2003, Watts filed a PCRA petition seeking reinstatement of his direct appeal rights *nunc pro tunc*. *Id.* at 981. The PCRA court dismissed the petition as untimely, and this Court affirmed in August 2005, noting that Watts did not exercise due diligence in determining the status of his appeal. *Id.* at 982. Watts did not seek review of our decision by our Supreme Court. In 2007, Watts filed a second PCRA petition, again alleging attorney abandonment, but claiming that his petition met the timeliness exception of section 9545(b)(1)(ii) because it was filed within 60 days of the *Bennett* decision. *Id.* The PCRA court dismissed the petition as untimely, this Court reversed, and our Supreme Court reversed us, holding that the PCRA court properly dismissed Watts' second PCRA petition. The Court held that the *Bennett* decision was not a fact upon which Watts could rely in meeting the timeliness exception of section 9545(b)(1)(ii). *Id.* at 986. The factual predicate of Watts' claim was his counsel's abandonment, which Watts discovered in 2003, within the one-year PCRA deadline. As such, the abandonment could not serve to satisfy section 9545(b)(1)(ii) for a petition filed in 2007. *Id.*

This Court sought to explain the interplay of the *Bennett* and *Watts* decisions and the language of section 9545(b) in *Commonwealth v. Smith*, 35 A.3d 766 (Pa.Super.2011). In that case, Smith's first, timely, PCRA petition was dismissed in 2001 after counsel did not file a brief on appeal. *Id.* at 767. Less than two weeks after the appeal was dismissed, Smith filed a second PCRA petition seeking reinstatement of his direct appeal rights *nunc pro tunc*, which the PCRA court granted. This Court quashed the *nunc pro tunc*

appeal in 2005, determining that Smith's second PCRA petition was untimely, and the Pennsylvania Supreme Court denied allowance of appeal. *Id.* at 768. In 2007, within 60 days of the filing of the *Bennett* decision, Smith filed a third PCRA petition, claiming that the petition was timely because *Bennett* afforded him a new method for obtaining collateral review. *Id.* at 769. The PCRA court dismissed the petition as untimely. This Court reversed, holding that because Smith, unlike Watts, had attempted to "become Bennett" by seeking allowance of appeal from our Supreme Court, yet had his diligent efforts to avail himself of the opportunities of the PCRA thwarted by counsel's initial abandonment, he was now entitled to have the merits of his PCRA petition addressed by a court. *Id.* at 772. Although the factual predicate of Smith's claims for purposes of section 9545(b)(1)(ii) was the dismissal of his first PCRA petition in 2001 due to counsel's abandonment, the subsequent change in law that occurred in 2007 with the *Bennett* decision afforded Smith his first opportunity to present his claim pursuant to section 9545(b)(2). *Id.* at 771. Therefore, this Court held that Smith's third PCRA petition satisfied the section 9545(b)(1)(ii) timeliness exception because it was filed within 60 days of the *Bennett* decision, i.e., within 60 days of the date that the claim could have been presented. *Id.*

Turning to the instant case, the Commonwealth claims that the outcome here is controlled by *Watts* rather than *Bennett*. The Commonwealth asserts that Appellant is attempting to use the *Bennett* decision as a new "fact" to satisfy the timeliness exception provided by section 9545(b)(1)(ii). Commonwealth's Brief at 16–17. The Commonwealth argues that the PCRA court here improperly "fashioned an *ad hoc* equitable exception to the

PCRA time bar." *Id.* at 17 (internal quotation omitted). We disagree.

The PCRA court, in its fact-finding capacity after hearing the evidence and making credibility determinations, held that the instant case is not materially distinguishable from *Bennett.* Appellant's judgment of sentence became final in July 2003. By December 2003, Appellant had hired PCRA counsel. PCRA Court Opinion, 9/16/2011, at 2. From 2003 through 2008, Appellant's mother, aunt, and cousin contacted counsel on Appellant's behalf on a monthly basis to inquire about the status of the PCRA action and appeal. *Id.* at 5. Although the *nunc pro tunc* direct appeal was quashed by this Court on October 10, 2007, counsel did not send a letter to Appellant advising him of this result until September 12, 2008.[4] *Id.* at 2–3. Ten days after he became aware of his counsel's abandonment, which was the first opportunity he had to seek relief, Appellant filed his second PCRA petition.

From our review of the record,[5] we discern no abuse of discretion or error of law on the part of the PCRA court in granting Appellant PCRA relief. It is clear that, unlike the appellant in *Watts*, Appellant does not claim that the *Bennett* case was the newly-discovered fact that satisfied section 9545(b)(1)(ii); nor does he assert, as did the appellant in *Smith*, that the *Bennett* decision is what started the 60–day clock running for purposes of section 9545(b)(2). The factual predicate of Appellant's claim, as was Bennett's, was his counsel's abandonment. Appellant claims, as did Bennett, that the first opportunity he had to present his claim was when he learned of the abandonment. Unlike *Watts* and *Smith*, Appellant did not litigate and lose his abandonment-by-counsel claim before *Bennett* was decided, then seek to use *Bennett* as basis to relitigate the question. Rather, despite exercising due diligence, Appellant did not discover that counsel abandoned him before *Bennett* became controlling precedent.

Thus, Appellant is not attempting "to tailor the factual predicate of his claim to circumvent the PCRA filing deadline." *Watts*, 23 A.3d at 986. Quite the contrary, Appellant sought, and the PCRA court granted based upon application of the *Bennett* holding, Appellant's first opportunity to have a court examine the merits of his direct appeal issues after both direct appeal counsel and PCRA counsel effectively abandoned him. This case involves a straightforward application of the *Bennett* holding, not an extension of that holding. *Cf. Smith, supra.* As such, we reject the Commonwealth's challenge to the jurisdiction of the PCRA court to reinstate Appellant's direct appeal rights, and address Appellant's issues on their merits.

■ Appellant first challenges an evidentiary ruling of the trial court. "The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be re-

4. The September 12, 2008 letter, which is part of the record before us, indicates that review of Appellant's file by another attorney at the firm revealed that Appellant's counsel "failed to file a timely [PCRA petition] and this resulted in your appeal being dismissed on October 10, 2007. While there is no need for me to get into details, [Appellant's PCRA counsel] is no longer employed with my Office." Appellant's Motion to Reopen Record, 6/8/2011, at Exhibit B. This illustrates the wisdom of our Supreme Court's observation

that "it is illogical to believe that a counsel that abandons his or her client ... will inform his client that his case has been dismissed because of his own failures." *Bennett*, 930 A.2d at 1275.

5. We note that the Commonwealth did not cross-appeal the timeliness determination of the PCRA court, or otherwise seek inclusion in the record of the transcript of the PCRA hearings.

versed only upon a showing that the trial court abused its discretion." *Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa.Super.2009) (quoting *Commonwealth v. Reid*, 571 Pa. 1, 811 A.2d 530, 550 (2002)). Even when a trial court does err, however, the error does not necessarily warrant reversal. *Commonwealth v. Laird*, 605 Pa. 137, 988 A.2d 618, 636 (2010) ("[A]n erroneous ruling by a trial court on an evidentiary issue does not necessitate relief where the error was harmless beyond a reasonable doubt.").

Appellant filed a motion *in limine* seeking to preclude any out-of-court statements of Quick. The trial court allowed Corporal Tuzynski of the Pennsylvania State Police to testify that Quick identified himself as T.J. Huddleston during a traffic stop that occurred two days after Camargo's murder. Appellant claims that this testimony was hearsay, irrelevant, and unfairly prejudicial. Appellant's Brief at 17–19.

The trial court excluded most of the out-of-court statements of Quick, "precluding the Commonwealth from introducing any statements made by Heath Quick implicating Appellant in the homicide or the events surrounding the death of the victim, which included all statements made by Heath Quick while he was in custody at various police departments." Trial Court Opinion, 11/30/2011, at 2. However, the trial court allowed evidence that Quick identified himself to police as "T.J. Huddleston" at a traffic stop. The trial court determined that the statement was not hearsay, as it was not being offered to prove the truth of the matter asserted, and was relevant "to demonstrate an association between Heath Quick and Appellant for the purposes of the conspiracy charges." *Id.* at 3.

Clearly, Quick's out-of-court statement was not hearsay, as it was not offered to prove that Quick was, in fact, T.J. Huddleston. Further, Appellant defeats his own

argument of prejudice by noting that the Commonwealth "had ample and relevant [additional] evidence of association between the two[.]" Appellant's Brief at 18. As such, even if the evidence were improperly admitted, the error was harmless and entitles Appellant to no relief. *See, e.g., Commonwealth v. Charleston*, 16 A.3d 505, 529 (Pa.Super.2011) (quoting *Commonwealth v. Atkinson*, 987 A.2d 743, 751–752 (Pa.Super.2009)) ("Harmless error exists where: ... the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence[.]")

■ Next, Appellant challenges the sufficiency of the evidence to sustain his convictions.

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Stays*, 40 A.3d 160, 167 (Pa.Super.2012) (internal quotations and citations omitted).

Appellant claims that the Commonwealth offered insufficient evidence to prove that he was an active participant in any of the crimes of which he was convicted. Rather, Appellant argues, he did not

believe Quick was serious when he said he would shoot Camargo and steal his drugs. Appellant's Brief at 20. While acknowledging that he was with Quick during both the murder and the robbery, Appellant claims that the evidence showed that he was merely present at the scene and assisted Quick only because he feared that Quick would shoot him too. *Id.* at 20, 22.

The trial court addressed Appellant's sufficiency claim as follows:

Throughout the three-day trial, the Commonwealth presented a wealth of evidence to the jury. In particular, in the Prosecution's case-in-chief, Trooper Mahalko testified about an interview he conducted with Appellant on September 22, 1999. Trooper Mahalko testified that Appellant related to him a conversation between Appellant and Heath Quick in which Quick told Appellant that "he wanted to shoot Camargo, steal his weed, steal his car and steal whatever money he had on him." Trooper Mahalko testified that Appellant, when asked if he responded to Quick's statement, "more or less agreed with him." Also during the interview, Appellant told Trooper Mahalko that Quick told him where he planned to dump the body, and that he knew Quick had a gun on him. Later testimony from Trooper Walter Butler confirmed that the discussed location was the site at which the body was located.

Moreover, testimony from George Burgess, Jr., who was in the car at the time the conversation took place, confirmed that Appellant and Quick discussed for "at most twenty minutes" how the robbery was to proceed. Burgess testified that while Appellant did not specifically agree to the shooting, Quick told Appellant that he planned to shoot Camargo. Burgess also confirmed that Quick had a gun with him . . . .

The Commonwealth also introduced testimony that after Quick and Appellant met up with the victim, David Camargo, Quick drove Camargo's car with Camargo in the passenger seat and followed [Appellant] to the location where the shooting occurred. Trooper Mahalko testified that, when asked "if this was the spot that they had planned on shooting Camargo at," Appellant "became very pale, nervous. Turned away and just said that, no, he just had to pee. That was it."

Additionally, the Commonwealth presented evidence that Appellant helped to dispose of the body, took home some of the marijuana taken from [Camargo], and later helped clean the vehicles of blood.

Trial Court Opinion, 11/20/2011, at 3–4 (citations omitted).

We agree that the evidence of Appellant's knowledge of and participation in the robbery and murder, as well as the cover-up, was more than sufficient to sustain the verdicts. Appellant discussed the crimes with Quick; assisted Quick in scheduling a meeting with Camargo; led Camargo to the site where Quick shot him; helped Quick transport the body to the prearranged dump site; walked down the hill to push the body farther down after it initially did not roll far enough; took a share of the spoils of the crime; went shopping the following day with Quick to purchase supplies for cleaning Camargo's blood from the cars; and attempted to arrange an alibi for the night of the murder. From this, the jury could reasonably infer a shared intent and conclude that Appellant's protestations of mere presence at the scene and fear for his own safety were incredible. *See, e.g., Commonwealth v. Priest,* 18 A.3d 1235, 1240 (Pa.Super.2011) ("It is well settled that the jury is free to

believe all, some or none of a witness's testimony.").

Because the evidence was sufficient to support the conclusion that Appellant was an active participant in the robbery and murder, he was properly found responsible for all of Quick's actions. *See, e.g., Commonwealth v. Lambert,* 795 A.2d 1010, 1025 (Pa.Super.2002) ("Since Appellant was an 'active participant' in the 'criminal enterprise,' he was criminally responsible for the criminal actions of his Co–Defendant which were committed in furtherance of the criminal endeavor."). As such, Appellant is entitled to no relief based upon his second issue.

Judgment of sentence affirmed.

President Judge Stevens files a concurring and dissenting opinion.

## CONCURRING AND DISSENTING OPINION BY STEVENS, P.J.

While I agree with the Majority's conclusion that Appellant's issues on appeal are meritless, I believe that his second PCRA petition was untimely and, thus, the PCRA court did not have jurisdiction to reinstate his appellate rights *nunc pro tunc;* therefore, I would have quashed the instant appeal.

Appellant's PCRA petition was patently untimely. Appellant was sentenced on October 12, 2000, and this Court affirmed that judgment of sentence on June 28, 2002. Our Supreme Court denied allocatur on April 22, 2003. Thus, Appellant's sentence became final on or about July 21, 2003, at the conclusion of the period for seeking certiorari to the Supreme Court of the United States. *See* 42 Pa.C.S.A. § 9545(b)(3) (stating that a judgment becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."). Appellant did not file this instant petition, citing ineffective assistance of first PCRA counsel as grounds for relief, until September 22, 2008, over five years after his judgment of sentence had become final. Because the petition had not been filed within the one-year time period provided for in 42 Pa.C.S.A. § 9545(b)(1), the PCRA court lacked jurisdiction over it unless one of the aforementioned exceptions to the time-bar applies.[1]

Appellant claimed he was entitled to relief under the sixty-day timeliness exception of 42 Pa.C.S.A. § 9545(b)(1)(ii) and in support of this assertion argued he never was advised of this Court's quashal of his second, direct appeal until on or about September 12, 2008, and filed the instant appeal within sixty days of learning of the quashal. Reply Brief for Appellant at 6. Appellant reasoned the facts herein parallel those in *Bennett, supra,* and he was similarly entitled to have the merits of his appeal heard.

As the Majority notes, in *Bennett,* the petitioner's counsel failed to file an appellate brief on appeal from the denial of his timely, first PCRA petition, which led to a panel of this Court dismissing the appeal. *Bennett,* 930 A.2d at 1266–1267. Bennett filed a pro se PCRA petition more than 60 days later seeking reinstatement of his PCRA rights *nunc pro tunc* and claiming that all prior counsel had been ineffective. *Id.* The PCRA court granted the reinstatement of Bennett's appellate rights; however, this Court quashed the second appeal

---

1. A *proviso* to the 1995 amendments to the PCRA exists which provides a grace period for petitioners whose judgments have become final on or before the effective date of the amendments. However, the *proviso* applies only to petitions that were filed by January 16, 1997. *See Commonwealth v. Thomas,* 718 A.2d 326 (Pa.Super.1998) (*en banc* ). Appellant is clearly not entitled to relief under this *proviso.*

after concluding that the second PCRA petition had been untimely. *Id.* The Pennsylvania Supreme Court granted allowance of appeal and held that Bennett's counsel's failure to perfect the appeal constituted an abandonment by counsel and could serve as a newly discovered fact under 42 Pa. C.S.A. § 9545(b)(1)(ii). Finding that Bennett did not have access to public records while incarcerated despite his exercising due diligence, our Supreme Court vacated this Court's order and remanded it for further proceedings.

Thereafter, in *Commonwealth v. Hackett*, 598 Pa. 350, 956 A.2d 978 (2008), our Supreme Court concluded that the petitioner had not exercised due diligence where he had filed an untimely PCRA petition in 2005 claiming that he was entitled to a new trial under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) because his co-defendant recently had been granted a new trial based upon evidence the prosecutor had engaged in discriminatory tactics during the jury selection process. *Hackett*, 598 Pa. at 356, 956 A.2d at 981. Concluding that the factual predicate of Hackett's claim was the release of a videotaped lecture in 1997 which showed the prosecutor advocating racial and gender-based discrimination in the jury selection process, not the order granting his co-defendant an new trial, our Supreme Court determined Hackett had not exercised due diligence since he did not raise his after-discovered evidence claim until several years after the videotape had been made public and found the PCRA petition filed in 2004 to be untimely. *Hackett*, 598 Pa. at 360, 956 A.2d at 984.

This Court recently also distinguished *Bennett* in *Commonwealth v. Watts* [611 Pa. 80], 23 A.3d 980 (Pa.2011). Therein, the defendant, an illiterate, attempted to rely upon *Bennett* for the proposition that the case itself constituted a new fact under section 95345(b)(1)(ii) of the PCRA and he had filed his PCRA petition within the sixty day requirement under 42 Pa.C.S.A. § 9545(b)(2). In *Watts*, our Supreme Court stressed that:

> The *Bennett* Court emphasized that any petitioner requesting a *nunc pro tunc* appeal based on an abandonment theory had to show due diligence and establish that the petition was filed in accordance with (b)(2). **We did not authorize courts to grant post-conviction relief in every instance where a petitioner has been abandoned by appellate counsel,** and we neither stated nor implied that petitioners could circumvent the statutory filing deadline by citing *Bennett* as an independent basis for a new claim of ineffectiveness. The latter proposition is absurd because section 9545(b)(1)(ii) applies only if the petitioner has uncovered facts that could not have been ascertained through due diligence, and judicial determinations are not facts.

*Watts*, 23 A.3d at 986 (emphasis added).

In addition, in *Commonwealth v. Smith*, 35 A.3d 766 (Pa.Super.2011), *reargument denied*, Feb. 8, 2012, a panel of this Court held Smith's third PCRA petition fell within the exception to the PCRA's timing requirements for claims with respect to which predicate facts were unknown to a petitioner and could not have been ascertained by the exercise of due diligence. Therein, following the denial of his direct appeal, Smith filed a timely, first PCRA petition which this Court dismissed. Smith filed a timely notice of appeal which this Court also dismissed for counsel's failure to file an appellate brief. Still represented by counsel, Smith filed a second PCRA petition seeking reinstatement of his appeal rights *nunc pro tunc* from the denial of his first PCRA petition. Without considering whether the second petition

had been timely filed, the PCRA court granted Smith *nunc pro tunc* relief, and Appellant appealed. A panel of this Court determined Appellant's second PCRA petition was untimely and quashed the appeal, and our Supreme Court denied allowance of appeal. Smith filed his third PCRA petition which the PCRA court dismissed as untimely. Appellant appealed and panel of this Court ultimately reversed and remanded, reasoning as follows:

Our challenge in this case is trying to reconcile the language of the PCRA with this controlling case law, and to provide further guidance to the PCRA courts in determining the parameters of the after discovered fact exception. The language in section 9545 of the PCRA is clear, and under our rules of statutory construction, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). The plain language of section 9545(b)(1)(ii) and section 9545(b)(2) creates a three-part test: 1) the discovery of an unknown fact; 2) the fact could not have been learned by the exercise of due diligence; and 3) the petition for relief was filed within 60 days of the date *that the claim could have been presented.* The specific question presented by this case is when the claim could have been presented. In our view, the third inquiry must involve a bifurcated analysis. If the claim does not involve a new theory or method of obtaining relief on collateral review, a petition must be filed within sixty days of discovering the fact exercising due diligence. If the claim does involve a new theory or method of obtaining relief on collateral review, a petition must have been filed within sixty days of discovering the factual predicate for the claim exercising due diligence. In addition, the denial of such claim on the basis of untimeliness must then have been appealed to our Supreme Court, and the petition seeking relief under section 9545(b)(1)(ii) must have been filed within sixty days of the new theory or method of obtaining relief being recognized. Given that the judicial decision by our Supreme Court in *Bennett* recognized a new theory or method of obtaining relief on collateral review, Appellant has satisfied these requirements.

As in *Bennett,* Appellant in this case filed a timely first PCRA petition, and while his second petition was untimely, it was filed within sixty days of being notified of the fact that his first PCRA had been dismissed. *Hackett* and *Watts* instruct us that the legal principles derived from *Bennett* must be applied to a preexisting set of facts.[FN6] Here, the pre-existing facts are that Appellant's initial appeal was denied due to counsel's abandonment in the failure to file a brief. As noted above, Appellant filed a new PCRA petition within sixty days. The PCRA court granted the reinstatement of Appellant's appellate rights, but this Court quashed the appeal. Appellant then attempted to "become Bennett"[FN7] by seeking allowance of appeal in the Supreme Court, but that petition was denied. Within 60 days of the filing of the decision in *Bennett,* Appellant filed a third PCRA petition. Unlike the appellants in *Hackett* and *Watts,* Appellant has exercised due diligence. Unlike the appellants in *Hackett* and *Watts,* Appellant is not attempting "to tailor the factual predicate of his claim to circumvent the PCRA filing deadline." *Watts,* 611 Pa. 80, 23 A.3d at 986. But for the Supreme Court's denial of allowance of appeal in 2006, he could have been "Bennett." Appellant has availed himself of the opportunities afforded by the PCRA, and yet his petition has escaped review.[FN8] For these reasons, we reverse the order denying his PCRA petition and remand this matter to the PCRA court to address said petition. In light

of our disposition, we need not address Appellant's second issue.

FN6. In other words, and as mentioned above, the assertion made cannot be an "attempt[ ] to tailor the factual predicate of [one's] claim to circumvent the PCRA filing deadline." *Watts,* 611 Pa. 80, 23 A.3d at 986.

FN7. *See* Justice Baer's Concurring Opinion in *Watts,* 611 Pa. 80, 23 A.3d at 988–989 (explaining that the appellants in Watts and Hackett had the opportunity to "become" Bennett by filing an appeal in the Supreme Court, but each failed to do so, and that "it was incumbent on Watts to take his *Bennett*-type argument to [the Supreme Court]"). As noted, Appellant in this case did try to take his *Bennett*-type argument to the Supreme Court.

FN8. We note that the instant set of facts are even stronger than in *Bennett* because Appellant filed his second PCRA petition within 60 days of this Court's dismissal of his PCRA appeal for failure to file a brief.

*Commonwealth v. Smith,* 35 A.3d 766, 771 –772 (Pa.Super.2011) (emphasis in original).

Herein, I would find that unlike the *Bennett* and *Smith* cases, Appellant has not availed himself of the opportunities afforded by the PCRA only to have his petition escape review. *cf. Smith,* 35 A.3d at 772. To the contrary, I believe Appellant is attempting "to tailor the factual predicate of his claim to circumvent the PCRA filing deadline." *Watts,* 23 A.3d at 986. The factual predicate of Appellant's second PCRA petition filed on September 22, 2008, is the untimely filing of his first PCRA petition. Appellant states that:

14. [Appellant] avers that the denial of his second direct appeal resulted from the ineffective assistance of his former counsel, Attorney Mark. S. Zearfaus.

15. The facts and grounds supporting the above averment are as follows:

a. [Appellant's] second direct appeal was dismissed on October 10, 2007[,] due to Defense Counsel's failure to file a timely Motion for Post–Conviction Collateral Relief.

16. [Appellant] did not become aware of the grounds for the instant Motion until on or about September 12, 2008.

Motion for Post–Conviction Collateral Relief, filed 9/22/08, at ¶¶ 14–16.

Appellant's claim that he had not become aware of the grounds for the instant motion until September 12, 2008, is inapposite. The requirement under the PCRA that any petition shall be filed within one year of the date the judgment of sentence becomes final, while it may not have been known to Appellant prior to July 21, 2003, was ascertainable to Appellant with the exercise of due diligence prior to July 21, 2004. *See* 42 Pa.C.S.A. 9545(b)(1)(ii). As such, the alleged failure of PCRA counsel to adhere to the dictates of the PCRA does not constitute after-discovered evidence, and efforts of family members to learn the status of his appeal from 2003 to 2008 are, therefore, not dispositive of our inquiry herein.

Moreover, even had Appellant known about the dismissal of his second appeal prior to September of 2008, he could not have filed a timely, second PCRA petition, as this Court had already determined his first one had been untimely, and he cannot relitigate that issue herein. *See* 42 Pa. C.S.A. § 9543(a)(3) (to be eligible for PCRA relief, the petitioner must plead and prove by a preponderance of the evidence that the allegation of error has not been previously litigated or waived); 42 Pa. C.S.A. § 9544(a)(3)(an issue has been previously litigated if it was raised and decided in a proceeding collaterally attacking the conviction or sentence) *See also Watts,* 23 A.3d at 986.

Also, it is a petitioner's burden to plead and prove the existence of newly discovered evidence. In support of this claim in his PCRA petition, Appellant merely states that his second, direct appeal was

dismissed on October 10, 2007, due to defense counsel's failure to file a timely PCRA petition and the bald allegation that he did not become aware of the grounds for his second PCRA petition until on or about September 12, 2008. He has included no support for his claim that he exercised due diligence prior to September of 2008. Indeed, the only support in the record is the PCRA court's own statement in its September 16, 2011, Opinion and Order that "Appellant demonstrated that he exercised due diligence because testimony at the May 9, 2011, hearing revealed that [Appellant's] mother, aunt, and cousin took turns calling the Law Office of Thomas Dickey on behalf of [Appellant] approximately once a month from 2003 until 2008, including phone calls to check the status of the direct appeal after it was filed in 2006." Trial Court Opinion, filed 9/16/11 at 5. Appellant admittedly has failed to ensure a transcript of the May 9, 2011, hearing for our review.

Though we are unable to verify the trial court's summary of the testimony, even were we to accept it as true, it reveals that Appellant, in fact, did not personally act with due diligence at all. To the contrary, in *Bennett,* the Supreme Court referenced the following actions on the part of the appellant which it found satisfied the due diligence standard:

> In this case, by invoking the exception at subsection (b)(1)(ii), Appellant alleges that he did not know that his trial counsel was appointed to represent him in his PCRA appeal until much later in the process. Likewise, he contends that he never received a copy of the Superior Court's order dismissing his appeal. Rather, he alleges that he attempted to find out the status of his appeal from the PCRA and Superior Courts. Ultimately, he contends that he did not know of PCRA appellate counsel's failure to file an appellate brief until October 4, 2000, when he received a letter from the Supe-

rior Court explaining that his appeal was dismissed due to PCRA counsel's failure to file a brief. Therefore, Appellant has alleged that there were facts that were unknown to him. Additionally, Appellant has provided a description of the steps he took to ascertain the status of his case. These steps included writing to the PCRA court and the Superior Court. Accordingly, Appellant alleges that he exercised due diligence in ascertaining those facts. Appellant's allegations, if proven, fall within the plain language of subsection (b)(1)(ii).

*Commonwealth v. Bennett,* 593 Pa. 382, 930 A.2d 1264, 1272 (2007) (footnote omitted).

In light of the foregoing, I would have quashed the instant appeal after finding the PCRA court lacked jurisdiction to restore Appellant's appellate rights because his second PCRA petition was untimely.