J-S91041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THOMAS J. HUDDLESTON | : | |
| | : | |
| Appellant | : | No. 25 MDA 2016 |

Appeal from the PCRA Order December 2, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s):  CP-14-CR-0001994-1999

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS[*], P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED FEBRUARY 07, 2017**

Thomas Huddleston ("Appellant") appeals from the order entered in the Court of Common Pleas of Centre County dismissing his first petition for collateral relief filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without an evidentiary hearing.  We affirm.

This Court has previously summarized the factual history of the case as follows:

> This case arises out of the robbery and murder of David Camargo.  [Appellant] and Heath Quick agreed to shoot Camargo and steal his marijuana, any money he had, and his car. [Appellant] and Quick set up a meeting with Camargo at a K-Mart in State College to buy some drugs.  After meeting at the K-Mart, Quick, Camargo and [Appellant] agreed to drive to a new meeting spot.  Quick got into the car with Camargo and followed [Appellant], who was driving his girlfriend's vehicle, to the new meeting spot in Black Moshannon State Park.  After

_____
* Former Justice specially assigned to the Superior Court.

entering the park, [Appellant] stopped his vehicle and got out to urinate. It was at this time that Quick shot and killed Camargo. [Appellant] and Quick then took Camargo's body and placed it into [Appellant's] trunk. [Appellant] drove his girlfriend's vehicle with Camargo's body in the trunk and Quick drove Camargo's vehicle. The two men drove to a place called "Devil's Elbow," where they threw Camargo's body down an embankment. When Camargo's body did not go far enough down, [Appellant] went down the embankment and pushed the body further down. [Appellant] and Quick split up the marijuana and money they took from Camargo. The police eventually arrested both [Appellant] and Quick. [Appellant] gave a statement to the police detailing his role in Camargo's death.

***Commonwealth v. Huddleston***, 55 A.3d 1217, 1218 (Pa.Super. 2012).

The PCRA court provides an apt procedural history as follows:

On October 11, 2000, following a jury trial, [Appellant] was found guilty of, *inter alia*, Criminal Homicide – Murder of the Second Degree. On October 12, 2000, [Appellant] was sentenced to life in prison.

***

[Having availed himself of the PCRA to restore direct appeal rights lost due to ineffective assistance of appellate counsel,] [Appellant] filed a timely direct appeal to the Superior Court, and on September 21, 2012, the Superior Court reached the merits of [Appellant]'s appeal and affirmed his conviction. [Subsequently, on March 6, 2013, the Pennsylvania Supreme Court denied allocator.]

On June 2, 2014, [Appellant] filed his third PCRA petition[, his first filed after judgment of sentence became final.] [Appellant] requests vacation of the judgment of sentence and a new trial due to ineffective assistance of trial counsel, Attorney [Karen] Muir, in failing to move to suppress [Appellant]'s statement to Trooper Mahalko, . . . and failing to take exception to the trial court's refusal to give the requested jury instruction on duress. [Appellant] also [asserted that the trial court erred in permitting, over objection, certain prosecutorial remarks regarding a marijuana pipe during closing arguments.]

> In [the PCRA court's] Opinion and Order of June 30, 2015, it gave notice and dismissed without a hearing [Appellant]'s ineffectiveness claims regarding [several issues, including] the trial court's refusal to give a duress instruction. . . . On October 26, 2015, an evidentiary hearing was held on [Appellant]'s two remaining ineffectiveness claims, Attorney Muir's failure to move for suppression of [Appellant]'s statement to Trooper Mahalko, [and other issues].

PCRA Court Opinion, filed 12/2/15, at 1-3. On December 2, 2015, The PCRA court entered an order denying Appellant relief and dismissing his petition. This timely appeal followed.

Appellant presents the following questions for our consideration:

1. WHETHER THE COURT OF COMMON PLEAS OF CENTRE COUNTY (THE "COURT") ERRED IN DENYING THE CLAIM UNDER 42 Pa.C.S. § 9543(a)(2)(i), RELATING TO THE PIPE USED BY THE PROSECUTOR IN SUMMATION, AS SET FORTH IN THE AMENDED PETITION FOR RELIEF UNDER THE . . . PCRA, WITHOUT AN EVIDENTIARY HEARING INASMUCH AS THE VERFIFIED, AMENDED PCRA PETITION, AFFIDAVITS, AND OTHER MATTERS OF RECORD RAISED MATERIAL ISSUES OF FACT ON SUCH CLAIM, WHICH HAD MERIT?

2. WHETHER THE PCRA COURT ERRED IN DENYING THE CLAIM UNDER 42 PA.C.S. § 9543(A)(2)(II), RELATING TO INEFFECTIVE ASSISTANCE OF COUNSEL IN OMITTING TO TAKE EXCEPTION TO THE REFUSAL OF THE REQUESTED DURESS INSTRUCTION, WITHOUT AN EVIDENTIARY HEARING INASMUCH AS THE VERIFIED, AMENDED PCRA PETITION, AFFIDAVITS, AND OTHER MATTERS OF RECORD RAISED MATERIAL ISSUES OF FACT ON SUCH CLAIM, WHICH HAD MERIT?

3. WHETHER THE COURT ERRED IN DENYING THE CLAIM UNDER 42 PA.C.S. § 9543(A)(2)(II), RELATING TO INEFFECTIVE ASSISTANCE OF COUNSEL IN OMITTING TO MOVE FOR SUPPRESSION OF THE STATEMENT TO TROOPER MAHALKO, INASMUCH AS THE PCRA PETITIONER PROVED THAT SUCH CLAIM HAD ARGUABLE MERIT, THAT TRIAL COUNSEL HAD NO

> REASONABLE BASIS FOR THE OMISSION, AND THAT PREJUDICE RESULTED FROM THE OMISSION?

Appellant's brief at 4.

When considering a PCRA court's denial of relief, we must bear in mind:

> Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (internal citations omitted).

To be entitled to relief, a petitioner must establish his claims have not been previously litigated or waived. *Commonwealth. v. Keaton*, 45 A.3d 1050, 1060 (Pa. 2012). Pursuant to Section 9544(b) of the PCRA, "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

Appellant's first challenges the PCRA court's denial of an evidentiary hearing on his claim that the trial court erroneously overruled a defense objection to the prosecutor's allegedly false suggestion during summation that a marijuana pipe found in Appellant's possession had originally belonged to the murder victim. Absent an accompanying allegation of trial or direct appellate counsel's ineffectiveness, however, Appellant's claim of trial court error is not cognizable for PCRA review, as he could have raised it

on direct appeal but did not do so. Consequently, he has waived this claim pursuant to Section 9544(b).

Next, Appellant contends that trial counsel rendered ineffective assistance for failing to take "the requisite exception" to the denial of his request for a duress defense jury instruction. A more specific objection than what counsel offered, according to Appellant, was necessary to preserve for direct review an issue asserting the erroneous denial of a duress instruction. We disagree.

"A specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver." **Commonwealth v. Moury**, 992 A.2d 163, 178 (Pa.Super. 2010) (citations omitted). "[T]he mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." **Commonwealth v. Hitcho**, 123 A.3d 731, 756 (Pa. 2015) (citation omitted); **see also** Pa.R.Crim.P. 603, 647(C).

The record shows trial counsel not only submitted a proposed charge relating to a duress defense but also objected to the court's suggestion that the charge found no evidentiary support in the record and again asked that the charge be read. The court had concluded a duress defense to homicide and related charges was inapplicable given the testimony presented, as Appellant denied any involvement with the shooting of Camargo, testifying,

instead, that he was shocked and surprised when he heard the gunshot while sitting in his girlfriend's car. Only when Quick rejoined Appellant after the shooting did he coerce Appellant's complicity in disposing of Comargo's body:

> **THE COURT**: The only other issue I have is the defense number 14 which we deferred until today which is the duress.
>
> **DEFENSE COUNSEL**: Right.
>
> **Q**: Do you still wish me to read this?
>
> **A**: Yes.
>
> **Q**: Any objections?
>
> **PROSECUTOR**: Yes.
>
> **Q**: What's your objection?
>
> **PROSECUTOR**: That there isn't even a claim by the defense including Mr. Huddleston's testimony of any duress until after the victim was killed. It's as simple as that. Duress can't occur after the crime…. It has to occur beforehand.
>
> He said, Mr. Huddleston, everything was fine until the victim was shot by Mr. Quick and then Mr. Quick started to give him orders and then waving a gun around. I think the charge is not correct for this factual situation.
>
> **THE COURT**: Ms. Muir?
>
> **DEFENSE COUNSEL**: I would just ask, judge, that you give it [the instruction] understanding Mr. Gricar [the prosecutor].
>
> **THE COURT**: Over your objection, I will not give it. I think Mr. Gricar is right. The very first sentence says duress is a defense to a criminal charge. A defendant acts under duress when he is coerced into doing an act which would otherwise be criminal.

I think the only actions that are here that he was coerced into doing was remaining silent, maybe moving the body, things of that nature. So, by his own testimony he wasn't afraid, didn't think the gun constituted a threat to anybody until after he heard it discharged. So, and by then the principal crimes had been committed. So I will not give [the instruction].

N.T. 10/11/00 at 558-59.

While defense counsel's objection proved unpersuasive, she specifically directed it to the court's position against a duress defense charge, and the court recognized it as such. Moreover, to the extent Appellant argues ineffectiveness by suggesting defense counsel overlooked certain supportive excerpts of his testimony, which he reproduces in his brief, we note the excerpts pertained only to events occurring in the aftermath of the shooting and lent no additional support to his cause.

The record, therefore, belies Appellant's claim that defense counsel failed to object properly to the denial of his proposed jury instruction on the defense of duress. Accordingly, absent a claim that direct appeal counsel ineffectively failed to raise a challenge to the court's denial of his proposed jury instruction, we deem this claim waived pursuant to Section 9544(b).

In his final issue, Appellant contends that trial counsel ineffectively failed to seek suppression of pre-arrest statements he gave to Pennsylvania State Trooper Todd Mahalko after he had allegedly requested an attorney during a prior interview less than 24 hours earlier. According to Appellant's testimony at the PCRA evidentiary hearing, Troopers Michael Wasilko and David Aiello arrived at his home on the night of September 21, 1999, and

asked if he would voluntarily accompany them to the Pennsylvania State Police barracks at Phillipsburg to answer questions pertaining to the investigation of Camargo's death. Appellant agreed, and, at just before 11:00 p.m., the troopers commenced their interview.

Shortly into the interview, Appellant claims, he refused to answer a question and requested an attorney. Troopers assured him an attorney would be provided, Appellant testified, but they said he would have to answer some questions in the meantime. N.T. 10/26/15 at 45-46. Appellant again insisted on an attorney, he maintained, and the troopers left the room agitated before returning with a form for him to sign. N.T. at 46.

Appellant claimed the troopers advised him that the form was an attorney request form and he did not need to read it but only needed to sign it. Appellant testified that he signed it without reading it. N.T. at 46. Troopers collected the form and advised they would begin the process of obtaining an attorney for him but would continue interviewing him in the interim. N.T. at 49. Appellant believed this was normal procedure, he maintained, and he answered questions for the next hour before the troopers tape recorded the interview and then returned him to his home. Id.

The following morning of September 22, 1999, the troopers asked Appellant to return to the barracks for further questioning. Appellant testified that he complied but, again, requested an attorney, only to be advised that one was imminent. N.T. at 51. Once at the barracks, Appellant submitted to a lie detector test before answering additional questions put to

him by Trooper Mahalko. Afterward, Appellant was taken to his mother's home. N.T. at 51. Appellant recalled that it was two days later, on September 24, 1999, that he was taken to the barracks again and directed to wait in the lobby, where his appointed counsel first met with him. N.T. at 52. He testified that he told counsel of his pre-interview request for an attorney, but she advised against seeking suppression, he said. In her opinion, Appellant recounted, the statements consistently supported his defense that he was not a confederate in Quick's decision to shoot Camargo and helped dispose of the body afterward for fear of his own death.

At the PCRA evidentiary hearing, the Commonwealth introduced Trooper Wasilko's Homicide Investigation Action Report, which recounted that he and Trooper Aiello opted to read Appellant his *Miranda* rights during the September 21 interview after they felt compelled to restrain an increasingly emotional Appellant in handcuffs and leg cuffs. At that point, they presented Appellant with a "Rights Warning" and a "Waiver Statement," which, the report indicates, Appellant signed. N.T. at 33-35. Appellant thereafter gave a taped statement and asked for counsel afterward.

According to Appellant, because his invocation of the right to counsel remained intact the following day, his statement to Trooper Mahalko was presumptively involuntary and, therefore, subject to suppression. Moreover, because he claims that his statement to Mahalko differed materially from that given to Wasilko and Aiello on the issue of whether he acted under

duress, he asserts that counsel's failure to seek suppression of the Mahalko interview constituted error.

As to claims of ineffectiveness, it is well settled that:

[c]ounsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the **Strickland [v. Washington**, 466 U.S. 668 (1984) ] performance and prejudice test into a three-part inquiry. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails.

**Commonwealth v. Charleston**, 94 A.3d 1012, 1019 (Pa.Super. 2014) (some citations omitted). To establish the prejudice prong, the appellant "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." **Commonwealth v. Spotz**, 18 A.3d 244, 259–60 (Pa. 2011). If an appellant has clearly not met the prejudice prong, a court may dismiss the claim on that basis alone. **Commonwealth v. Travaglia**, 661 A.2d 352, 357 (Pa. 1995).

Appellant contends that the outcome of his trial would have been different had defense counsel sought and won suppression of his statements to Trooper Mahalko, which, he claims, uniquely "detracted from duress and supported the inference that he was an active participant with Heath Quick in robbing and killing David Camargo." Appellant's brief at 21. Our review

- 10 -

of the trial transcript, however, discloses no support for this claim, for Trooper Mahalko attributed essentially the same statements to Appellant as did Troopers Wasilko and Aiello.

Specifically, on cross-examination, Trooper Wasilko testified that Appellant and Quick talked about killing Camargo, with Quick broaching the topic and Appellant not taking it seriously as they were high on marijuana:

> **DEFENSE COUNSEL:** So, when Mr. Huddleston first talked to you he said that there was no agreement to kill Oscar Camargo?
>
> **TROOPER WASILKO:** He never made any mention to me or any statement to me that they had actually formulated a plan. What he told me was that they had talked about this on the way to State College when they were going to meet Mr. Camargo.
>
> **Q:** And when he said that to you he said he didn't believe what Quick was saying? Didn't think Quick was serious, something along those lines?
>
> **A:** Something along those lines, yes.
>
> \*\*\*
> **Q:** He told you that he was high. Mr. Huddleston told you he himself was high at the time that all of this happened?
>
> **A:** Yes.
>
> **Q:** That would have been high on marijuana?
>
> **A:** Yes, he stated that they had smoked quite a bit of marijuana that day.

N.T. at 349, 350.

Trooper Mahalko's testimony largely paralleled Wasilko's:

> **TROOPER MAHALKO:** Huddleston stated that Quick made the statement to him that he wanted to shoot Camargo, steal his weed, steal his car and steal whatever money he had on him.

- 11 -

**PROSECUTOR:** Did Mr. Huddleston tell you if he made any response to Quick?

**A:** Yes, He just more or less agreed with him. Said, [`]yeah, you should just go ahead and do that.['] He then made the comment that he was so high he wasn't using proper judgment and didn't think he was really serious about doing it.

\*\*\*

**DEFENSE COUNSEL:** And at that point Mr. Quick said something along the lines I should shoot this guy.

**A:** Yes.

**Q:** Mr. Huddleston told you he did not think that Mr. Quick was serious?

**A:** He stated that he was smoked up. He didn't think he [Quick] was real serious.

**Q:** Trooper Mahalko, Mr. Huddleston told you that he did not think Mr. Quick was serious?

**A:** Um-hum.

**Q:** Yes, again, please.

**A:** Yes.

**Q:** Thank you. How long was your interview?

**A:** I think we talked probably three or four hours.

**Q:** Okay. Didn't, in that three or four hour time frame did Mr. Huddleston also tell you that he thought Quick was just going to steal the weed from Dave?

**A:** He made that statement one time, too.

N.T. 138, 161.

Both troopers testified to the same effect, namely, that Appellant admitted to having a conversation with Quick about killing Camargo for marijuana but also insisted he believed Quick was not really serious about what he was saying. While Mahalko initially testified that Appellant "more or less agreed" with Quick's proposition, he also agreed that Appellant stated he did not think Quick was serious and believed only that Quick might steal marijuana from Camargo.

Appellant broadly asserts—without any reference to what notes of testimony bolster his claim—that his statement to Mahalko alone "supported the inference that he was an active participant" in the robbing and killing of David Camargo, but the record belies the position that Appellant supplied a statement to Trooper Mahalko that differed materially from what he supplied to other investigators. In both statements, as conveyed by the state troopers, Appellant insisted that he dismissed Quick's deadly proposal as the frivolous product of marijuana intoxication and later experienced surprise when Quick shot Camargo in his presence.

Given the alignment of Mahalko's testimony with all other evidence admitted against Appellant, we disagree that defense counsel's election to forego a motion to suppress Appellant's statement to Trooper Mahalko prejudiced Appellant. As Appellant has clearly not met the prejudice prong of his ineffectiveness claim, we may dismiss his claim on this basis alone. **_See Travaglia_**, **_supra_**.

Order is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2017