## AGNES BORHAM v. FRANCIS DAVIS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF MERCER COUNTY.

Argued October 13, 1891—Decided January 4, 1892

The minuteness with which a trial judge, in his charge to the jury, should discuss the evidence and the inferences therefrom, is largely within his discretion. Where he has first reviewed the whole case, briefly, but with substantial accuracy and fairness, it is not required that, in a subsequent reference to portions of it, he should again review the entire testimony relating to such portions.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 236 October Term 1891, Sup. Ct.; court below, number and term not shown.

On November 18, 1890, Mrs. Agnes Borham brought trespass against Francis Davis. Issue.

At the trial, on May 13, 1891, the plaintiff, the widow of

Charge of Court below.

James Borham, deceased, introduced testimony tending to show that the death of her husband, a man of known intemperate habits found dead on the street in Sharon, Pa., on April 3, 1890, was caused by intoxication induced by liquors furnished to him by the defendant on the evening of April 2d: See § 3, act of May 8, 1854, P. L. 663.

At the close of the case on the evidence, the court, MEHARD, P. J., delivered an elaborate charge to the jury, portions of which, after reviewing the testimony on both sides, were as follows:

[Francis Davis tells you that Borham came to his bar-room that evening about seven o'clock, and that he had with him a little dog; that he was sober at that time ; that he stayed there for about half an hour, and that he didn't drink nor ask for a drink, and that he spent his time in talking to Mr. Davis; Mr. Davis stating also that Mr. Borham had at one time worked for him.] [1]

Now, gentlemen of the jury, besides the evidence on the part of the plaintiff tending to show the fact that Borham got liquor at Davis's that night, or that day, the plaintiff introduces the testimony of several witnesses who tell you that Mr. Borham was at that time a man of known intemperate habits. The defendant, through his counsel, then announced that that would not be controverted in this case ; and therefore, you will take it as a fact that James Borham, on the second day of April, 1890, was a man of intemperate habits, known as such to the defendant Francis Davis. Beside the general testimony and that concession, Mrs. Borham testified that she gave to Mr. Davis notice on two occasions not to sell intoxicating liquor to her husband. . . . .

[On the other hand, the evidence upon which the defendant relies, as disproving the allegation that Francis Davis furnished or sold, either by himself or by his agent, intoxicating liquor to James Borham on that afternoon or evening, is the testimony of Mr. Davis himself, who, as I have said, tells you that Borham came in there about seven o'clock in the evening and remained talking with him about half an hour, and that he then went out, and that he did not drink while there, or ask for a drink, and that he was then sober; ] [2] and the testimony of

Mr. Jessup, of Mr. Parker, of Mr. Jones, who tell you that they were there during that evening and at the time when Borham was there, and that they didn't see Borham either take a drink or ask for a drink. The fact of the intoxication of Mr. Borham that evening, the defendant undertakes to account for by proving that Mr. Borham did, on that evening, get intoxicating liquor at the Shenango House, beer and whiskey, and a bottle afterwards.

Now, gentlemen of the jury, you are to judge of the credibility of the witnesses in this case, on the part of the plaintiff and on the part of the defendant. . . . . Then you are to have regard to the degree of intelligence of the witness; whether the witness could remember the facts which were at one time observed, and state them in an intelligent manner. You are to have regard to the opportunity the witness had for knowing the facts which he or she undertakes to state; because, of witnesses equally desirous of telling the truth, equally capable of remembering what they did observe, see or hear, where one of the witnesses had a better opportunity of observing the facts than the other, the greater degree of credit should be given to the one who had the best opportunity of knowing. For instance, [when Mr. Taylor tells you that he went into the bar-room of Francis Davis on that evening, and that he saw James Borham and saw that he was drunk, would you give to his statement greater credit than you would to the statement of others who observed him and stated that James Borham was not drunk? Now, Mr. Davis tells you that Borham was sober while he was in his saloon. Mr. Jessup tells you that he appeared to be sober. Mr. Jones tells you he was sober, and Mr. Davis tells you he was sober while he was there and when he left there. Now, gentlemen of the jury, when did he ·leave there? Did James Borham leave the bar-room of Francis Davis at half past seven o'clock, as Francis Davis tells you he did? Or did he leave the bar-room in the neighborhood of nine o'clock, as stated by Mrs. McEldowney and Mrs. Putt? Now, gentlemen of the jury, if Mrs. Putt and Mrs. McEldowney are telling you the truth, as to seeing James Borham coming out of the bar-room of Francis Davis on that evening, what was the hour when they saw him coming out? Are they correct in stating to you that they had spent that evening in prayer

meeting?   Are they correct in telling you that they had gone
from prayer meeting to their home, and when they got into
their homes it was then nine o'clock or about that time ?   If it
was about nine o'clock when James Borham came out of the bar-
room of Francis Davis, what was his condition when he came out
of the bar-room ?   You have heard the testimony of Mr. Tyler
and Mr. Taylor, that they saw him at nine o'clock and fifteen
minutes, according to the clock at Koehler's, down along State
street, and coming from the direction of the American House,
but at a point which I understand to be west of the Shenango
House.   Now, if James Borham was seen by them at that time,
what was his condition ?   They tell you that he was in a state
of deep intoxication ; that they were attracted by his stagger-
ing, and that they watched him for several minutes until he
got out of sight.   Now, was the time which elapsed between
the time when Mrs. Putt and Mrs. McEldowney saw James
Borham coming out of the bar-room of Francis Davis, and the
time when James Borham was seen by Mr. Tyler and Mr.
Taylor, sufficient for him to have gotten into that state of
intoxication, if he was sober when he was at the saloon or bar-
room of Francis Davis?   There is no witness who has been
called upon the part of the defendant, who has testified to you
that Borham was intoxicated while he was at the place of Fran-
cis Davis.   The statement of the witnesses is that he was sober
at that time ; and we take it, therefore, that the theory of the
defence is, that if he became intoxicated that evening, it was
after he had gone out of that saloon.   · Now; gentlemen, the
question of time becomes essential ; it becomes important, I
should rather say.   Because, if it be true that James Borham
went into the saloon of Francis Davis early in the evening of
the second of April, 1890, in some degree of intoxication as
stated by his wife and as stated by Mrs. Putt, and came out
of there at nine o'clock in the evening in a state of intoxication
described by Mr. Taylor and Mr. Tyler, that would be persua-
sive evidence that the statement, the allegation of the plaintiff,
that James Borham got intoxicating liquor there, was true.
You will not understand me as saying that it would be conclu-
sive evidence of that fact.   It is rather in the nature of corrob-
orative evidence ; yet it is a fact for you to consider.] [6]

Now, gentlemen of the jury, you are to take into considera-

Charge of Court below.

tion the testimony of the witnesses on both sides of this case bearing upon this question. If you are satisfied that the testimony of William Thomas is true, that James Borham got three glasses of beer at the house of Francis Davis on that afternoon, and that that beer entered into what induced intoxication in James Borham that night, and that that intoxication resulted in the death of James Borham, Francis Davis is liable for all the damages to which the plaintiff is entitled in this case, even though James Borham got no other intoxicating liquor there during the evening.

[If you are not satisfied, however, by the weight of the evidence, that he did get that beer or any beer there then, are you satisfied that he got beer or other intoxicating liquor, between the time he left home after changing his clothes, and the time when he returned to his supper at six o'clock? If he got intoxicating liquor there at that time, and that intoxicating liquor entered into what induced the drunkenness which resulted in his death, if his death resulted from drunkenness, then Francis Davis is liable for the plaintiff's damages.] [4] [If you are not so satisfied, then you are to say whether the evidence shows to you by its fair preponderance and weight, that James Borham got intoxicating liquor from Francis Davis or his bar-keeper in the later evening of the second of April, and that that entered into what induced the drunkenness resulting in his death, if his death did result from drunkenness.] [7] If you find any or all of these facts, then you will proceed to the further inquiries involved in this case. . . . . .

—The jury returned a verdict for the plaintiff for $1,350, " and, upon inquiry and request of the court to state the times when the sales occurred upon which the verdict is based, state that they find that sales of intoxicating liquors were made as testified to by William Thomas, and in the evening afterwards."

A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, specifying that the court erred :

1, 2. In the portions of the charge embraced in [ ] [1] [2]

3. In omitting to refer to that part of the defendant's testimony denying that Borham obtained beer on the afternoon of April 2d, as testified to by William Thomas, and contradicting Thomas's testimony.

Opinion of the Court.

4. In the portion of the charge embraced in [ ] [4]

5. In submitting to the jury to find as a fact, without evidence to support it, whether James Borham obtained intoxicating liquor at defendant's house, between the time he left home after changing his clothes, and the time when he returned to his supper at six o'clock.

6, 7. In the portions of the charge embraced in [ ] [6] [7]

8. In submitting to the jury to find as a fact, without evidence to support it, whether James Borham obtained intoxicating liquor from defendant or his bar-keeper later in the evening; that is, after seven o'clock, P. M. of April 2d.

*Mr. Jas. A. Stranahan* and *Mr. Thos. Tanner* (with them *Mr. W. C. Haus* and *Mr. W. W. Shilling*), for the appellant.

Counsel cited: Reber v. Herring, 115 Pa. 599; Bovard v. Christy, 14 Pa. 267; Phila. etc. R. Co. v. Alvord, 128 Pa. 42; Musselman v. Railroad Co., 2 W. N. 105; Snyder v. Wilt, 15 Pa. 59; Gehman v. Erdman, 105 Pa. 371; McTaggart v. Thompson, 14 Pa. 155.

*Mr. A. W. Williams* (with him *Mr. S. H. Miller* and *Mr. Q. A. Gordon*), for the appellee.

Counsel cited: Fox v. Fox, 96 Pa. 60; Lilly v. Paschal, 2 S. & R. 394; Knapp v. Griffin, 140 Pa. 616; Reeves v. Railroad Co., 30 Pa. 454; Melvin v. Melvin, 130 Pa. 15; Phelin v. Kenderdine, 20 Pa. 354; Ralston v. Groff, 55 Pa. 276; Supplee v. Timothy, 124 Pa. 385; Commonwealth v. Orr, 138 Pa. 276.

OPINION, MR. JUSTICE MITCHELL:

All the assignments of error relate to the manner in which the learned judge below reviewed the evidence and placed the case before the jury.

It is true, as the appellant claims, that the charge should present the case fully, fairly, and adequately. In the review of the evidence it must not be inaccurate on matters of substance, and it must not omit or slur over the strong points on either side. But how much detail shall be entered into; how minute the reference to the testimony shall be, and how extended the discussion of it; how far arguments shall be noticed, their true bearing and relevancy pointed out, and the extent to which

Opinion of the Court.

they are supported by the evidence, etc., must be left largely to the discretion of the presiding judge. He is generally in a better position to estimate the requirements of the case with the jury in hand than we can possibly be; and unless we can see clearly that the jury may have been misled or turned aside from the true issue, general exceptions of the nature of the present are not to be sustained.

The learned judge below, after stating the issue in general terms, went over the whole case, first of the plaintiff and then of the defendant, witness by witness, briefly as to each, but with substantial accuracy and fairness, so that little complaint is made of this part of the charge. He then continued with remarks upon various points suggested, and references to portions of the testimony, and in so doing it is complained that he omitted to refer to other portions favorable to defendant. That he did omit some passages which the defendant's advocate would undoubtedly have made prominent, may be conceded. But it cannot be required that the judge shall rehearse every item of the evidence, or quote any branch of it entire each time that he refers to it. It is sufficient if he gives the outlines and general effect correctly, so as to convey the proper idea to the jurors of the points to which he is referring, and to recall to them the evidence, on their own recollection of which they must make up their verdict. The judge in the present case had, as already noted, gone over the whole testimony connectedly. He was not required to do so again, when he referred subsequently to detached parts of it in connection with certain points of the case. All that was necessary was that he should leave undisturbed the impartial general presentation the jury already had from him. We are unable to say that he did the appellant any injury in this respect, and it would be tedious and unprofitable to discuss the assignments on the subject separately. None of them can be sustained.

Judgment affirmed.