# Pennsylvania Railroad Company, Appellant, *v.* Donora Southern Railroad Company.

*Appeals—Error—Harmless error—Charge of court.*

A judgment will not be reversed because of an error in the charge, which was not an erroneous statement of a fact upon a decisive point in the case, but a misstatement that was wholly unimportant, except, that it might tend to divert the attention of the jury from a ground of dispute collateral to the main question; and this is especially the case where the attention of the court was not called to the misstatement at the time.

Argued Oct. 24, 1907.   Appeal, No. 98, Oct. T., 1907, by plaintiff, from judgment of C. P. Washington Co., May T., 1906, No. 157, on verdict for defendant in case of Pennsylvania Railroad Company v. Donora Southern Railroad Company.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ.   Affirmed.

Ejectment for tract of land in Carroll township.   Before McILVAINE, P. J.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows:

[Did Joseph Bamford make an actual entry upon this land in dispute with the intention of claiming it ?   Now, there does not appear to be any dispute or much dispute about the entry ; there is a dispute about what his intention was when he entered, and we will speak of that under another head.   There

does not appear to be any dispute at all, I believe, that he remained in possession for a period of twenty-one years. The history of his coming to that locality and occupying this ground is something like this: In 1871 Allen Campbell owned one of these lots that John Dobbs had laid out, No. 62, I believe, and had a house on it in which he lived, and Joseph Bamford bought that lot from him and got a deed and had a good paper title for lot No. 62. Now, the defendant's claim is that Joseph Bamford at the time he bought that lot which he afterwards conveyed to the steel company, the Union Steel Company or Mellons, also took possession of this land in dispute; that between the Allen Campbell lot and a lot that has been designated here as the Fleming lot, lay the land in dispute, it being about 2,000 feet from the Allen Campbell lot up the river to the Fleming lot and running back at the Allen Campbell lot 190 feet and at the Fleming lot about 60 feet; that he took possession of that intervening land there as well as of the house and lot for which he received a deed from Allen Campbell; and as I said before, there does not appear to be very much dispute about the fact that he did move into that house about that time and that he did have possession of this land intervening between the Allen Campbell house and the Fleming house, for twenty-one years and more after the time that he moved in, having bought the lot in 1871 and having moved in perhaps the next spring, in 1872, which would make the twenty-one years expire in 1893. I say there does not appear to be much dispute about that. There does not appear to be very much dispute about the fact that his possession there was visible, open and notorious,—people knew that he occupied the ground between the Allen Campbell house and the Fleming lot, he was ploughing it and he was raising vegetables and he was using part of it as a landing for a ferry and allowing others to use it, and what he did there was open, visible and notorious. The contest, gentlemen, comes on the fourth requisite for a title by possession; and that was, you will recollect, that the possession must be distinct or exclusive, adverse and hostile. Now, the contest here turns not on the actual entry upon the land, not on the uninterrupted and continued possession for twenty-one years and not on the question that it was an open, notorious and visible possession,—not on

that, but it turns on this : Was that actual entry in 1872 with the intent to claim that land as his own and was that claim kept up for twenty-one years adversely and hostile to the Moorhead people, and was the possession of that six and 73-100 acres exclusive,—his exclusive possession and not a possession under Moorhead as landlord ?] [1]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1) portions of charge as above, quoting it ; (2) that the charge as a whole was inadequate.

*R. W. Irwin,* with him *James A. Wiley, A. T. Morgan,* and *W. W. Wishart,* for appellant.

*Samuel McClay,* of *Reed, Smith, Shaw & Beal,* with him *R. J. Dodds,* and *T. F. Birch,* for appellee.

Opinion by Mr. Justice Fell, January 6, 1908 :

This was an action of ejectment to recover possession of a narrow strip of land lying between the plaintiff's road and the Monongahela river.   The plaintiff's title was by purchase from Moorhead and the defendant's by purchase from Bamford who claimed to have acquired title by adverse possession. That the defendant's predecessor in title had been in possession a sufficient length of time to acquire title adversely was not disputed, but the character of his possession was.   The vital question in the case was whether he had occupied the land as a tenant of Moorhead or under a claim of ownership.

The first assignment is that the court incorrectly stated in the charge that it was not disputed that Bamford took possession of the land in question at the time of his purchase of a lot from Campbell in 1871, when in fact the defendant's claim and the testimony in support thereof was that he took possession only of a part of the land at that time and of the remainder at the time of a later purchase of another lot from another person.   Both purchases were made more than twenty-one years before a dispute arose as to the title, and the error had no bearing on the period of possession as it was concededly sufficient to found an adverse title on.   It is, however, argued that this statement withdrew the attention of the jury

from the disputed claim that Bamford had acquired a right to a part of the land by virtue of his second purchase and had an important bearing on the question as to whether he had entered into possession as a tenant. The error complained of was not the erroneous statement of a fact upon a decisive point in the case, but a misstatement that was wholly unimportant except that it might tend to divert the attention of the jury from a ground of dispute collateral to the main question. Moreover, the attention of the judge was not called to the misstatement at the time. This should have been done before the jury withdrew in order that he might correct it: Halfman v. Insurance Co., 160 Pa. 202 ; Provident Life and Trust Co. v. Philadelphia, 202 Pa. 78 ; Kuntz v. Railroad Co., 206 Pa. 162 ; Commonwealth v. Razmus, 210 Pa. 609. In the case last cited it was said by the present Chief Justice : " If the judge in referring to the testimony of a witness misquoted it in a material point, his attention should have been called to it at once before the jury retired. A party may not sit silent and take his chances of a verdict and then if it is adverse complain of a matter which if an error would have been immediately rectified and made harmless."

There is no merit in the remaining assignment, that the charge was inadequate because of the failure of the court to comment on the testimony and to call the attention of the jury to the various facts and circumstances which indicated the nature of Bamford's possession. The case had been very fully argued by most competent counsel. The charge, which covers eight pages of the paper-book, contains an exceptionally full, clear and accurate statement of the law, of the contention of the parties, of the exact question to be decided, and of the grounds on which the verdict should be based. Whether further comment was needed was a matter that rested in the discretion of the trial judge : Borham v. Davis, 146 Pa. 72.

The judgment is affirmed.