J-S23022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLEN LEE URBAN, JR. | : | |
| | : | |
| Appellant | : | No. 1219 WDA 2018 |

Appeal from the Judgment of Sentence Entered May 2, 2018
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0001048-2017

BEFORE:   BENDER, P.J.E., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JUNE 12, 2019**

Appellant Allen Lee Urban, Jr. appeals from the judgment of sentence imposed after a jury convicted him of facsimile weapons of mass destruction.[1] Appellant challenges the sufficiency and weight of the evidence.  He also argues that the trial court erred in its qualification of an expert witness and an instruction given to the jury.  We affirm.

We adopt the trial court's summary of the facts and procedural history relevant to this appeal.  *See* Trial Ct. Op., 9/28/18, at 1-5.

Appellant raises the following issues, which we have reordered for purposes of this appeal:

> 1. The verdict was not supported by sufficient evidence because the evidence did not establish that the smoke bomb had the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5516(a)(2)(ii).

appearance or external characteristics of a facsimile weapon of mass destruction, where one layperson kicked and stomped on the smoke bomb, another layperson immediately identified it as a smoke bomb, where the smoke bomb had stopped smoking when law enforcement arrived within 5 minutes, and where an FBI bomb expert confirmed that it was not an explosive device immediately upon observing that the smoke bomb did not have end caps to contain any explosives.

2. The verdict was not supported by sufficient evidence because the Commonwealth failed to establish that [Appellant] intentionally, knowingly or recklessly caused alarm to law enforcement by dropping a smoke bomb that had already burnt out by the time law enforcement arrived on the scene within 5 minutes, and where an FBI bomb expert confirmed that it was not an explosive device immediately upon observing that the smoke bomb did not have end caps to contain any explosives.

3. The verdict was against the weight of the evidence where the credible evidence established that the smoke bomb did not have the appearance or external characteristics of a facsimile weapon of mass destruction, since one layperson kicked and stomped on the smoke bomb, another layperson immediately identified it as a smoke bomb, where the smoke bomb had stopped smoking when law enforcement arrived within 5 minutes, and where an FBI bomb expert confirmed that it was not an explosive device immediately upon observing that the smoke bomb did not have end caps to contain any explosives.

4. The verdict was against the weight of the evidence, where the credible evidence established that the object was clearly a smoke bomb. Consequently, [Appellant] did not intend to cause alarm to law enforcement with a smoke bomb, nor did he use the smoke bomb knowingly or recklessly to cause alarm to law enforcement, where that smoke bomb had already burnt out by the time law enforcement arrived on the scene within 5 minutes, and where an FBI bomb expert confirmed that it was not an explosive device immediately upon observing that the smoke bomb did not have end caps to contain any explosives.

5. The Court erred in permitting Nathan Dimit to testify as an expert for the purposes of identifying whether or not a suspicious device could be identified as a bomb, where he had never authored any articles, treatises or publications on the subject, had never testified at any criminal proceeding as an

expert or otherwise, and his training directed that all suspicious objects are treated as real bombs until proven otherwise.

6. The Court erred when instructing the jury that they could consider a statement [Appellant] gave to law enforcement, stating that he "made" the device, when [Appellant] did not state that he "made" the device, and the evidence established that it was a commercially made smoke bomb.

Appellant's Brief at 6-7.

Following our review of the record, the parties' briefs, and the well-reasoned opinion of the trial court, we affirm on the basis of the trial court's analysis of Appellant's issues on appeal. *See* Trial Ct. Op. at 5-24.

Specifically, we find that the trial court properly concluded there was sufficient evidence to establish that (1) the "smoke bomb" resembled an explosive device; and (2) Appellant's reckless conduct caused a "high degree of alarm and reaction" by not only local law enforcement, but also the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, and Firearms, and the Allegheny County Bomb Squad. *Id.* at 9. We also agree that the verdict was not against the weight of the evidence. *Id.* at 13-15.

Further, we find no abuse of discretion by the trial court in qualifying Nathan Dimit, a Bomb Technician for the Allegheny County Bomb Squad, as an expert in the area of identifying suspected bombs and their ability to be disabled. *See id.* at 14-18. Finally, we discern no abuse of discretion by the trial court in its instruction to the jury that Appellant "made" the device in question, as it was warranted by the evidence presented at trial. *Id.* at 18-24.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/12/2019

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : NO. CP-04-CR-1048-2017

V. :

ALLEN LEE URBAN, :

       DEFENDANT : SUPERIOR COURT NO. 1219 WDA 2018

TESLA, J. **SEPTEMBER 28, 2018**

## OPINION

### I. INTRODUCTION

This Opinion is entered pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) in order to address Defendant's direct appeal of this Court's Sentence Order, which was entered on May 2, 2018, following Defendant's conviction after a jury trial of one count of facsimile weapons of mass destruction. Defendant raises claims challenging the weight and sufficiency of the evidence, the qualifying of an expert witness, and an instruction given to the jury. Because Defendant's claims have no merit and are contrary to the record, the Sentence Order of the Court should be affirmed.

### II. FACTS AND PROCEDURAL HISTORY

On May 20, 2017, a Criminal Complaint was filed, alleging that Defendant had previously thrown fireworks at the Firehouse Bar in Ambridge, Pennsylvania, that Defendant had previously threatened the staff and patrons of the bar with a firearm, and that Defendant had most recently dropped what appeared to be an explosive device from his car outside the bar. The Criminal Complaint charged Defendant with terroristic threats, recklessly endangering another

1

person, propulsion of missiles onto a roadway, aggravated assault, arson, and risking catastrophe. A preliminary hearing was held on June 6, 2017.

On July 24, 2017, the Commonwealth filed an Information, charging Defendant with two counts of terroristic threats, one count of possession of explosive or incendiary material, one count of risking catastrophe, one count of recklessly endangering another person, and one count of propulsion of missiles onto a roadway. On January 3, 2018, Defendant filed a Motion in Limine, seeking to exclude from evidence certain alleged admissions made by Defendant to law enforcement. On February 2, 2018, the Court entered an Order indicating that it would address Defendant's Motion in Limine during the March trial term, for which Defendant's trial was scheduled.

On February 27, 2018, the Commonwealth filed a Motion to Amend Information, seeking to dismiss every count except the count of propulsion of missiles onto roadways, and seeking to add a count of facsimile weapons of mass destruction. Defendant did not object to the amendment.

A jury was selected on March 12, 2018. On March 13, 2018, the Court made rulings on Defendant's Motion in Limine, and trial commenced. The Commonwealth presented the testimony of Patrolman Michael Scheers, who responded to the scene; Peter Peronis and George Kutcher, local residents who observed the events and were evacuated; Bomb Technician Nathan Dimit from the Allegheny County Bomb Squad, who disabled the device dropped by Defendant; and Special Agent Benjamin Lindsey from the FBI, who assisted and interrogated Defendant. Their testimony and the other evidence admitted at trial demonstrated the following facts.

On Friday, May 19, 2017, at approximately 3:30 in the afternoon, Defendant drove his yellow Chevrolet Monte Carlo slowly down 13th Street in Ambridge, stopping in front of the

2

Firehouse Bar. N.T., Jury Trial, Vol. II, 3/13/18, at 151-59, 170-71. He then lit the fuse of what appeared to be an explosive device, dropped it from the window of his car onto the street in front of the bar, and then drove away. Id. The device, which was comprised of multiple cardboard tubes and fuses, all held together by black tape, emitted smoke for several minutes. Id. at 171. Local police were dispatched and arrived on scene within minutes. Id. at 79-80, 172. The fire department arrived afterward, a perimeter was formed, and local residents were evacuated. Id. at 83, 88-89, 128-29, 173-74. The Allegheny County Bomb Squad, FBI, and ATF were notified and arrived on the scene four to five hours later with a variety of equipment, including several bomb disposal robots and a total containment vessel designed to contain the blast from an explosive device. Id. at 89-90, 161-62, 187-88, 221-22. George Kutcher and Peter Peronis testified to the presence of local news and a helicopter on scene. Id. at 161-62, 173-74. Defendant was detained at his home on 24th Street, and taken to the Ambridge Police Department's interrogation room. Id. at 89-90. He was *Mirandized* and then interviewed, first by the Ambridge Police Department, and then by the FBI and ATF. Id. at 90-95.

Bomb Technician Dimit of the Allegheny County Bomb Squad, who was qualified as an expert in the identification and disabling of bombs, testified that he believed it was a credible bomb, that the device appeared to be an improvised explosive device, that he would not go near the device, that two robots were used to disassemble the device, and that the component parts were placed in the total containment unit. Id. at 184, 190-96. He testified within a reasonable degree of certainty that the device could be a suspected bomb. Id. at 196. A subsequent flame test, after the device was disabled, showed that it tested positive for flame, and was more than likely a firework. Id. at 196-98. He testified that such devices, although simply made, can still be dangerous. Id. at 210.

3

Special Agent Lindsey of the FBI, whose expertise with bombs was stipulated to by Defendant, corroborated the testimony of Officer Dimit regarding the potential dangerousness of the device and the appropriateness of the steps taken. Id. 219, 225-28. Special Agent Lindsey also testified to the interview of Defendant. Id. at 229. Although Defendant initially denied making the device or setting it off, he later admitted that the device was a smoke bomb, that he set it off, that he had taken twenty-one valium pills with alcohol, that he was upset because of an interpersonal conflict with people at the bar, and that he wanted to get back at them for making fun of him or spreading rumors about him. Id. at 229-32. A search warrant was then obtained and executed upon Defendant's residence where firearms, a variety of commercial grade fireworks, tubes, fuses, and other supplies were found. Id. at 104-121, 232-34.

Defendant rested on March 14, 2018 without presenting any evidence. The parties agreed to submit a verdict to the jury only on the charge of facsimile weapons of mass destruction. The jury returned a verdict the same day, finding Defendant guilty.

On May 2, 2018, Defendant was sentenced to serve twelve months less one day to twenty-four months less one day in the Beaver County Jail, followed by five years of probation. On May 14, 2018, Defendant filed a Motion for Post-Sentence Relief.[1] In his Motion, Defendant challenged the weight and sufficiency of the evidence, and requested additional time to supplement his Motion. On May 21, 2018, the Court entered an Order granting Defendant thirty days to file a supplement. Defendant's counsel advised the Court on June 21, 2018 that a supplement would not be filed. The Commonwealth filed an Answer to Defendant's Motion on

---

[1] The 10th day prescribed by Pa.R.Crim.P. 720(A)(1) fell on a Saturday in this case. Thus the ten-day deadline to file a post-sentence motion under Rule 720 extends to the next business day, i.e., Monday, May 14, 2018, the date Defendant filed his Motion. 1 Pa.C.S. § 1908 ("When any period of time is referred to in any statute . . . [w]henever the last day of any such period shall fall on Saturday or Sunday . . . such day shall be omitted from the computation."); Pa.R.Crim.P. 101(C) ("To the extent practicable, these rules shall be construed in consonance with the rules of statutory construction."). See also, e.g., Commonwealth v. Sanford, 497 Pa. 442, 444-45, 441 A.2d 1220, 1221-22 (1982) (Saturday and Sunday excluded from speedy-trial calculation under Rules of Criminal Procedure where the deadline fell on a weekend).

4

July 19, 2018, arguing that Defendant's Motion should be denied. After reviewing the record, the Court entered an Order on July 24, 2018, denying Defendant's Motion.

Defendant filed a Notice of Appeal on August 23, 2018. The Court entered an Order on August 28, 2018 directing Defendant to file a concise statement. Defendant filed his Concise Statement on September 17, 2018, again raising the issues of the sufficiency and weight of the evidence. Defendant's counsel also claims that the Court erred by determining that Bomb Technician Nathan Dimit was an expert in his field, and that the Court erred in one of its instructions to the jury. The Court next addresses each of Defendant's claims in turn.

## III. ANALYSIS

### A. The evidence presented at trial was sufficient.

Defendant's first claim is that the evidence presented at trial was not sufficient to sustain his conviction for facsimile weapons of mass destruction. For a defendant's conviction to be upheld, evidence sufficient to find him guilty beyond a reasonable doubt must have been presented at trial. Commonwealth v. Batley, 436 Pa. 377, 390, 260 A.2d 793, 800 (1970). "A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Commonwealth v. Widmer, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000) (citing Commonwealth v. Karkaria, 533 Pa. 412, 625 A.2d 1167 (1993)). The Court must consider the evidence in the light most favorable to the Commonwealth, as verdict-winner. Commonwealth v. Morales, 625 Pa. 146, 158, 91 A.3d 80, 87–88 (2014).

> There is sufficient evidence to sustain a conviction when the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to enable the fact-finder to conclude that the Commonwealth established all of the elements of the

5

offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, we note that the entire trial record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence.

Id. (quotation marks and citations omitted). Accord In Interest of J.B., 189 A.3d 390, 408 (Pa. 2018)("[I]n undertaking sufficiency review, we [do] not act in the capacity of a 'super-jury' to reconsider and re-determine the facts of the case adduced at trial and decide, anew, an appellant's guilt or innocence."). "[T]he Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." Commonwealth v. Huddleston, 55 A.3d 1217, 1223 (Pa.Super. 2012) (citing Commonwealth v. Stays, 40 A.3d 160, 167 (Pa.Super. 2012)) (quotation marks and citations omitted).

In this case, the jury found Defendant guilty of one count of facsimile weapons of mass destruction under 18 Pa.C.S. § 5516(a)(2)(ii).

> **(a) Offense defined.**--A person commits an offense if the person intentionally, knowingly or recklessly manufactures, sells, purchases, transports or causes another to transport, delivers or causes another to deliver, possesses or uses a facsimile weapon of mass destruction and by such action causes any of the following:
>
> . . . .
>
> (2) Alarm or reaction on the part of any of the following:
>
> . . . .
>
> (ii) A law enforcement organization.
>
> . . . .
>
> **(c) Definitions.**--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

6

. . . .

"Facsimile bomb." A device which:

    (1) resembles in appearance and external qualities an explosive or incendiary device; but

    (2) does not have the capability to cause an explosion or fire.

. . . .

"Facsimile weapon of mass destruction." A facsimile biological agent, facsimile bomb, facsimile chemical agent or facsimile nuclear agent.

18 Pa.C.S. § 5516.

**(b) Kinds of culpability defined.--**

(1) A person acts intentionally with respect to a material element of an offense when:

    (i) if the element involves the nature of his conduct or a result thereof it is his conscious object to engage in conduct of that nature or to cause such a result; and

    (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

    (1) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

    (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

. . . .

7

**(d) Prescribed culpability requirement applies to all material elements.--** When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.

**(e) Substitutes for negligence, recklessness and knowledge.--** When the law provides that negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally.

18 Pa.C.S. § 302.

Bomb Technician Dimit described for the jury how the device appeared to be a type of homemade explosive device. Id. at 193-94.

Q. Up on the screen is Commonwealth's Exhibit 15. Can you describe to the jurors what you see in that picture as a certified bomb technician?

A. Yeah. On this photo you can see there's five cardboard tubes with no markings on it whatsoever. Commonly referred to as, I'm sorry, five cardboard tubes with no markings on them taped together. Those cardboard tubes sometimes are commonly known as M style devices or they can also be pyrotechnic or firework devices.

The green hobby fuse coming out of the end on the, I'm not sure how to use this laser pointer, sir. The green hobby fuse coming out of the end here and here (indicating) as we were told in the initial investigation, and there is three that look like they were burned off already.

Q. How does this object compare to objects that you've seen in the field that turned out to be real bombs?

A. It looks very similar to what is commonly known as an M style device where people make their own homemade fireworks that are known to blow up.

Q. As an explosive?

A. Yes, sir.

Id. See also Cmwlth. Ex. 15.

As previously described in Section II of this Opinion, the evidence at trial showed: (1) that Defendant manufactured what appeared to be a type of improvised explosive device from

8

smoke-bomb type fireworks, cardboard tubes, and fuses which he possessed at home and assembled together using black tape; (2) that this device, although capable of generating smoke, was not capable of causing an explosion; (3) that Defendant transported the device in a yellow Chevrolet Monte Carlo when he drove with it to the Firehouse Bar; (4) that Defendant used the device when he rolled down his car window, ignited the device, tossed the device in front of the bar, and then drove away; (5) that Defendant did this because he wanted to scare the bar owner and patrons due to negative interactions with them in the past; (6) that the smoking device caused alarm and reaction from the bar owner and local residents, who notified law enforcement; (7) that the smoking device caused alarm and reaction to law enforcement and emergency personnel, who secured the immediate area and evacuated the entire block, believing that the device could be a bomb or IED, and not being able to determine the level of dangerousness of the device at that time; (8) that further alarm and reaction to law enforcement was caused when local law enforcement notified the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, and Firearms, and the Allegheny County Bomb Squad, all of which responded to the scene and played active roles in the investigation and response to the threat caused by Defendant; (9) that the high degree of alarm and reaction resulted in the presence of news media, and use of a helicopter, bomb disposal robots, and a total containment unit designed to contain any blast from the explosive device; and (10) that this equipment was used in order to safely examine, disassemble, and assess the level of threat from the device which Defendant manufactured, transported, and used.

Defendant asserts in his Concise Statement that the evidence was not sufficient because the device was ultimately determined to be a smoke bomb. To the extent that Defendant argues that the evidence was insufficient because the device was ultimately determined to be a smoke

9

bomb as opposed to an actual bomb, the charge Defendant was convicted of was *facsimile* weapon of mass destruction. Unlike the crime of weapons of mass destruction, it is an element of facsimile weapons of mass destruction that the device *not* be able to cause an explosion. Compare 18 Pa.C.S. § 5516 (facsimile weapons of mass destruction), with 18 Pa.C.S. § 2716 (weapons of mass destruction). Defendant also asserts in his Concise Statement that the evidence was not sufficient to show that he acted intentionally. However, the statute does not require a minimum threshold of intent as the *mens rea*; acting recklessly in sufficient. 18 Pa.C.S. § 5516(a).

In his Concise Statement, Defendant's counsel also claims that "an FBI bomb expert confirmed that it was not an explosive device immediately upon observing that the smoke bomb did not have end caps to contain any explosives." This is, unfortunately, something of a mischaracterization of the evidence. It was not until after a perimeter had been set up, the area had been evacuated, the bomb squad and FBI had arrived with bomb disposal robots and a total containment vessel, and the bomb disposal robots were used to safely approach, manipulate, and examine the device itself that Special Agent Lindsey and Bomb Technician Dimit were able to determine that the device was more likely a pyrotechnic or firework device as opposed to a homemade explosive device. N.T., Jury Trial, Vol. II, 3/13/18, 196, 223-28.

> At the time we didn't know what the devices were made out of. So when we separated them obviously we are looking through the robot cameras trying to determine what this possible IED could be, if it was a homemade explosive device or if it was a pyrotechnic or firework device.
>
> By looking at them we came to an assumption, but couldn't be 100 percent certain, before we moved them that they were more than likely pyrotechnic or firework devices and probably not homemade devices.

10

Id. at 196. Special Agent Lindsey testified that "[i]t certainly could have been a bomb. . . Looking at it, it certainly looked like a possible IED." Id. at 224. He further testified on the potential dangerousness of the device. Id. at 225-27.

> People buy the actual material to make their own fireworks, but then pack it with a whole lot of material. So I've had at least two cases where the devices of this size, we placed them on the inside of a car on the dashboard and it completely destroyed the inside of the vehicle.

Id. at 226.

While it is true that there was testimony from a nearby resident that before the police arrived a person approached and kicked the device, it is also true that there was testimony from the nearby residents that they did not know initially that the device was only a smoke bomb, and that the smoke from the device caused concern. N.T., Jury Trial, Vol. II, 3/13/18, at 157-58, 163-65, 171. More importantly, the expert testimony from law enforcement showed that any action of approaching or touching the device was foolish, and that by all appearances the device could be explosive and highly dangerous. Id. at 127-28, 195-96, 210-12, 225-28.

> Q. If you had been told that someone had approached very near to the object that was depicted in Commonwealth's Exhibit 15, say five, ten feet away, what would your opinion of that be?
>
> A. It wouldn't be a very smart move. Like I said we used a robot so we didn't have to approach it, because by looking at the photographs it appears to be an IED.
>
> Q. As a trained bomb technician then you would say don't go near that object?
>
> A. Absolutely I would not go near that object.

Id. at 195-96.

The Court notes that it was undisputed that Defendant was the person who assembled the components of the device and set it off outside of the Firehouse Bar. Defendant's counsel conceded as much in his closing argument, characterizing Defendant's actions as a "hoax," a

11

"practical joke," a "prank," and "in poor taste." N.T., Jury Trial, Vol. III, 3/14/18, at 24. Defendant's counsel argued that Defendant "didn't make this stuff. He bought it like that and he taped it together." Id. at 28. The Court believes that Defendant's conduct of assembling the separate components meets the definition of manufacturing under the statute. 18 Pa.C.S. § 5516(a). But even if it did not, it was undisputed that Defendant transported, delivered, possessed, and used the device, any one of which is sufficient under section 5516. Id. Indeed, Defendant's counsel argued in favor of the consistency of the nearby residents who witnessed Defendant drive up with the device, set off the device, and drop the device into the road. N.T., Jury Trial, Vol. III, 3/14/18, at 28-29.

> Mr. Peronis, he tells you, he's the neighbor, he tells you that the car goes by, he slows down, he lifts it, drops it out, and pulls away slowly. Doesn't peel out. Doesn't try to get out of there in a hurry. But what's most specific or most important is Mr. Peronis and Mr. Kutcher, I apologize I couldn't remember his name earlier, Mr. Peronis and Mr. Kutcher both were consistent in that he drops it out and it starts smoking.
>
> What was also important is what wasn't said. He didn't tell you that Mr. Urban made threats, that he yelled anything, that there was a boom, anything that would support an intention on Mr. Urban's part to cause a reaction and the police response that occurred. And that's important, ladies and gentlemen, because you have two guys that were both there seeing the same thing. Drives, lights it, drops it, and pulls away.

Id.

Thus, Defendant's arguments regarding whether Defendant manufactured the device or not are of no avail where the uncontested evidence clearly showed that Defendant transported, delivered, possessed, and used the device. And while Defendant's counsel argued that the slowness of Defendant's actions demonstrated an absence of intent to cause a reaction, the jury could just as permissibly have inferred that the slowness of Defendant's actions reflected a measured deliberation or premeditation on Defendant's part. And again, intent is not the minimum *mens rea* required by the statute; recklessness is sufficient. 18 Pa.C.S. § 5516(a).

12

Common sense dictates that igniting a suspicious-looking device such as the one Defendant assembled, and then throwing that device out of a vehicle and onto a public roadway, would very likely result in law enforcement being contacted and taking appropriate steps to ensure the safety of the community. Defendant confessed that he wanted to frighten the bar owner and patrons by his actions. It should come as no surprise, then, that law enforcement would respond with apprehension as well.

Looking at the record in the light most favorable to the Commonwealth, the evidence was sufficient for the jury to find that Defendant manufactured, transported, and used a facsimile bomb, and by doing so caused alarm and reaction from numerous law enforcement organizations. The evidence was equally sufficient for the jury to infer that, in doing so, Defendant consciously disregarded a substantial and unjustifiable risk that his actions would cause alarm or reaction on the part of law enforcement. This evidence is plainly sufficient to meet every element of the crime of facsimile weapons of mass destruction. Because the evidence in this case was sufficient to convict Defendant of facsimile weapons of mass destruction, Defendant's claim has no merit and should be denied.

## B. The jury's verdict was not against the weight of the evidence.

Defendant's second claim is that the jury's verdict was against the weight of the evidence. In Commonwealth v. Jacoby, 170 A.3d 1065, 1080–81 (Pa. 2017), the Supreme Court of Pennsylvania summarized the law regarding challenges to the weight of the evidence.

> "A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054–55 (2013). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* at 1055. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is

13

imperative so that right may be given another opportunity to prevail." *Id.* The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. *Id.* at 1054. The appellate court reviews a weight claim using an abuse of discretion standard. *Id.* at 1057.

At trial, [a] jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. "Issues of witness credibility include questions of inconsistent testimony and improper motive." *Commonwealth v. Sanchez*, 614 Pa. 1, 36 A.3d 24, 27 (2011) (citation omitted). A jury is entitled to resolve any inconsistences in the Commonwealth's evidence in the manner that it sees fit. *See Commonwealth v. Rivera*, 603 Pa. 340, 983 A.2d 1211, 1220 (2009) (stating that "the trier of fact, in passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence") (citation omitted).

As noted, inconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence. *Clay*, 64 A.3d at 1055.

Id.

The Commonwealth presented considerable evidence, as described supra, demonstrating Defendant's culpability in manufacturing, transporting, and using a facsimile bomb for the purpose of frightening the bar owner and patrons. The evidence unequivocally showed the high level of alarm and reaction caused not only to the local residents, who were evacuated, but also the alarm and reaction caused to numerous law enforcement organizations, including local law enforcement, as well as the FBI, ATF, and the Allegheny County Bomb Squad. The evidence further supported a finding that Defendant acted recklessly in causing the alarm and reaction he did.

The jury was entitled to believe or disbelieve the testimony of each of the witnesses presented by the Commonwealth. Jacoby, 170 A.3d at 1080–81. Defendant elected not to testify or present any witnesses of his own. It is not the role of the Court to second-guess the jury, unless its verdict would result in a denial of justice. Widmer, 560 Pa. at 319-20, 744 A.2d at 752

14

(quoting Commonwealth v. Brown, 538 Pa. 410, 648 A.2d 1177 (1994)) ("Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.' "). The Court does not believe there is anything unjust about the jury's verdict in this case. Rather, the Court concludes that the evidence presented by the Commonwealth in this case was plainly of sufficient weight to support the jury's verdict.

Because the jury's verdict was not against the weight of the evidence, Defendant's claim has no merit and should be denied.

### C. Bomb Technician Nathan Dimit was properly qualified as an expert witness and Defendant could not have been prejudiced.

The Commonwealth sought to qualify Bomb Technician Nathan Dimit of the Allegheny County Bomb Squad as an expert in the field of identification and disabling of bombs and suspected bombs. The Court allowed counsel to *voir dire* Mr. Dimit. N.T., Jury Trial, Vol. II 3/13/18, at 175-82. The questions elicited by counsel showed that Mr. Dimit's employment for approximately eight years as a bomb technician required him "to render safe potentially hazardous devices, explosive devices, and mitigate any explosive threat. Id. at 177-78. Over his eight-year career, he had responded over 50 times as a bomb technician. Id. at 178. Mr. Dimit completed six weeks of hazardous devices school in Alabama, a week of robot training school and was a certified Hazmat technician. Id. He was required by the FBI to complete 16 hours of training per month and a forty-hour course of external training per year, and had always maintained his continuing education. Id. at 178-81. His training requires him to complete bomb-based scenarios in which he must render safe suspicious packages or bombs. Id. at 179.

15

Defendant's counsel argued that Mr. Dimit should not be qualified as an expert because he had never testified in a criminal trial as an expert and had no published opinions or articles in the field. The Court ruled that these issues went to the weight of Mr. Dimit's testimony rather than to his qualifications as an expert. Id. at 182-83. The Court ruled that Mr. Dimit was an expert in the area of identification of suspected bombs and their ability to be disabled. Id. at 184.

"The admission of expert testimony is a matter of discretion for the trial court, and will not be disturbed absent an abuse of discretion." Commonwealth v. Poplawski, 634 Pa. 517, 552–53, 130 A.3d 697, 718 (2015) (citing Commonwealth v. Walker, 625 Pa. 450, 92 A.3d 766, 772 (2014)).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.
>
> Expert testimony is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training knowledge, intelligence and experience.

Id. (citations and quotation marks omitted).

"The standard for qualifying an expert witness is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible." Commonwealth v. Kinard, 95 A.3d 279, 288 (Pa.Super. 2014) (citing Commonwealth v. Riffert, 379 Pa.Super. 1, 21, 549 A.2d 566, 576 (1988)). "The witness' expertise may be based on practical, occupational, or other experiential training; it need not have been gained through academic training alone." Id.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

16

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703.

The *voir dire* of Mr. Dimit plainly showed that he had all the education and training required by the Federal Bureau of Investigation for one who professionally identifies and disables bombs, as well as eight years of "practical, occupational, [and] other experiential training" doing exactly that. Riffert, 379 Pa.Super at 1, 549 A.2d at 576.

Defendant's counsel objected because Mr. Dimit had not testified as an expert before. If such were the test, however, then there could be no expert witnesses. To the extent that Mr. Dimit has not published any academic articles regarding the identification and disabling of suspected explosive devices, it is plain from Mr. Dimit's testimony that his occupation as a bomb technician is a hands-on, and not an academic, position. Police officers are qualified as experts routinely on the subjects of their professional expertise and practical experience, and rarely have any of them published an academic article. Defendant's counsel takes issue in his Concise Statement with Mr. Dimit stating that his training and practical expertise indicates that all suspicious objects should be treated as a bomb until shown otherwise. N.T., Jury Trial, Vol. II, 3/13/18, at 186-87. The wisdom of such a practice for someone in Mr. Dimit's field is obvious, however, and only further contrasts Mr. Dimit's expertise in his field as compared to lay persons who might approach and kick a device such as the one assembled by Defendant.

The Court also notes that, while Defendant's counsel challenges the expertise of Mr. Dimit, Defendant's counsel nevertheless stipulated to the same expertise for Special Agent Lindsey. As with Mr. Dimit, there was no evidence that Special Agent Lindsey had any

17

published opinions or previous history testifying as an expert. Id. at 218-219. Special Agent Lindsey also testified that suspicious objects should be treated as a live explosive device until shown otherwise. Id. at 220. Indeed, Special Agent Lindsey's expert testimony largely mirrored and confirmed the appropriateness of the actions taken by Mr. Dimit. Thus, even if the Court somehow erred in qualifying Mr. Dimit as an expert, Defendant could not have been prejudiced when the testimony of Special Agent Lindsey, whose expertise was stipulated to, was for all intents and purposes, practically identical.

Because Bomb Technician Nathan Dimit was properly qualified as an expert and because Defendant could not have been prejudiced, his claim has no merit and should be denied.

## D. The Court properly instructed the jury.

Defendant claims last that the Court erred when it instructed the jury regarding evidence of other acts for which the Defendant was not on trial. At trial, Special Agent Lindsey testified that Defendant confessed that the device was a smoke bomb, that he set it off, that he had taken twenty-one valium pills with alcohol, that he was upset because of an interpersonal conflict with people at the bar, and that he wanted to get back at them for making fun of him or spreading rumors about him. N.T. Jury Trial, Vol. II, 3/13/18, at 229-32. Special Agent Lindsey, when questioned whether there had been any modifications to the device which Defendant had placed on the street, testified that there had been modifications, including the stripping of the tubes, and their being taped together along with their ignition source. Id. at 238-39. He testified that they had been taped together in a fashion that would not normally be found. Id. at 239. He described the device as looking like an improvised explosive device. Id. at 224, 239. He also testified that he had encountered firework enthusiasts before and was not familiar with any practice of removing

firework wrappers in order to alter how the device burns. Id. at 241. Rather, he believed such an action would appear "as a way of camouflaging some sort of activity with that paper tube." Id.

After each side rested, the Court reviewed proposed jury instructions with counsel. One instruction reviewed was a modification of standard instruction 3.08, Evidence of Other Offenses as Substantive Proof of Guilt. N.T., Jury Trial, Vol. III, 3/14/18, at 11-15. The Court proposed the following cautionary instruction:

> "You have heard evidence tending to prove that Defendant may have been involved in improper conduct for which he is not on trial. I'm referring to Defendant's alleged statements to FBI Special Agent Lindsey that Defendant allegedly told them that he had a dispute with the bar owner and patrons of the Firehouse bar in Ambridge because they spread rumors about him and that he wanted them to quit, that he took 21 Valium pills the night before, and that he built the device and threw it out the window of his car in order to scare them. Remember, my recollection of the facts does not control. As sole deciders of the facts it is your recollection and your recollection alone that controls. I've only referred to the testimony of FBI Special Agent Lindsey in order to give you context for my instruction"

> "This evidence is before you for a limited purpose. First, to prove the identify [sic] of the person who built and threw out the window the alleged facsimile bomb."

> "Second, to prove the state of mind of the individual, that is whether the individual intentionally or knowingly or recklessly manufactured, transported, possessed or used a facsimile bomb."

> "Third, to prove motive of the individual who may," and I'll change that "who allegedly made and threw out the window the alleged facsimile bomb onto the public street near Firehouse Bar in Ambridge."

> "This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing the Defendant is a person of bad character or criminal tendencies from which you may be inclined to infer guilt."

> It had a limited purpose, and I wanted to make sure that this was done properly.

Id. at 11-13.

19

Counsel for the Commonwealth agreed to the instructions. Counsel for Defendant objected only to the Court indicating evidence to the effect that Defendant "built" or "made" the device, suggesting instead that he would be satisfied if the Court instead referred to the device as being "taped together." Id. at 13-15. The Court indicated that it would refer to the device as being "made" in its final instructions, which is ultimately how the Court instructed the jury after closing arguments. Id. at 15, 60-61.

The Court also instructed the jury repeatedly that it was the jury's recollection of the facts that was controlling. E.g., id. at 52-53.

> A cautionary instruction I provide every trial is that I may refer to some particular evidence. I certainly don't propose to refer to all evidence, but I will leave this to your recollection. For as I've said, it is your recollection and yours alone that governs.
>
> You're not bound by my recollection nor by the recollection of the attorneys in their arguments to you. You're not to conclude that any evidence which I call to your attention or which the attorneys have called to your attention is the only evidence which you should consider. It is your responsibility to consider all the evidence that you believe is material in deliberating upon your verdict.
>
> And again, I'll provide you the cautionary instruction. If I refer to testimony or evidence introduced at trial based upon my recollection, remember it is your recollection and only your that controls in a determination of the facts in criminal case. If I do that and I refer to testimony or evidence. I'm only doing that in order to give context so that you can understand the legal instructions.

Id.

The Pennsylvania Superior Court has stated the standard of review that applies where a jury instruction given at trial is challenged on appeal. Commonwealth v. Sandusky, 77 A.3d 663, 667 (Pa.Super. 2013).

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as

20

a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

Id. (quoting Commonwealth v. Thomas, 904 A.2d 964, 970 (Pa.Super. 2006)).

It has been the law in Pennsylvania for over a century that the nature and extent of a trial

court's discussion of the evidence when instructing the jury is committed to its sound discretion.

[H]ow much detail shall be entered into; how minute the reference to the testimony shall be, and how extended the discussion of it, how far arguments shall be noticed, their true bearing and relevancy pointed out, and the extent to which they are supported by the evidence, etc.,—must be left largely to the discretion of the presiding judge. He is generally in a better position to estimate the requirements of the case with the jury. . .

Borham v. Davis, 146 Pa. 72, 77–78, 23 A. 160 (1892).

The extent to which a trial judge ought to go in reviewing, analyzing and commenting on testimony depends very largely upon the circumstances of the case and to some extent upon the line of argument pursued by counsel in addressing a jury. Generally it must be left to his sound discretion. It is only in exceptional cases, as for example, where it plainly appears that the charge is so inadequate in this regard as to be misleading, or where by indirection it withdraws the attention of the jury from material issues or evidence, or from matters entering as necessary elements into the decision of the question at issue, or where its tendency as a whole is to unduly magnify the importance of the proofs introduced by one party, and to belittle those introduced by the other party, that the court will be reversed upon a general exception of this nature.

Commonwealth v. Wertheimer, 23 Pa.Super. 192, 194 (1903) (quoting Blank v. Barnhart, 17

Pa.Super. 214, 217 (1901)) (quotation marks omitted).

More recent cases have similarly upheld the exercise of discretion of trial courts in such

matters. E.g., Finnerty v. Darby, 391 Pa. 300, 322, 138 A.2d 117, 127-28 (1958) ("A trial judge

is not required to refer to the testimony of every witness in reviewing the evidence in the case

21

nor refer to every contention made by counsel in his presentation to the jury."). Accord Betz v. Erie Ins. Exch., 957 A.2d 1244, 1260-61 (Pa.Super. 2008).

The evidence presented in this case, direct and circumstantial, demonstrated that the device was made from various components, and that Defendant was the one who, after stripping the cardboard tubes of their wrappers, put the various components together using electrical tape, included an added fuse, and then set it off. E.g., N.T., Jury Trial, Vol. II, 3/13/18, at 83 ("It was five cardboard tubes taped together with black tape and had fuses coming out of each of the tubes."); Id. at 105 ("We recovered [from the search of Defendant's residence] a wooden box that had the matching cardboard tubes that were used in the making of the device, the matching fuses, the green same construction of the fuses."); Id. at 193 ("It looks very similar to what is commonly known as an M style device where people make their own homemade fireworks that are known to blow up."); Id. at 208 ("I couldn't tell exactly what it was, but it looks like a bomb with a hobby fuse coming out of the end and green cardboard, or I'm sorry, cardboard tubes that were unmarked with green hobby fuse coming out the end, taped together."); Id. at 212 ("[T]here was no markings on the cardboard tubes. They were improvised."); Id. at 239 ("Yes. Well, they, clearly the tubes had been stripped from something and were taped together along with their, I believe their ignition source. . . [T]hey were taped together in a fashion that wasn't normal, would normally be found."); Id. at 229-32 (Special Agent Lindsey testifying that Defendant himself admitted that he set off the device).

Defendant's counsel takes issue with the Court's use of the word "made," after advising the Court that use of the phrase "taped together" instead would have been acceptable. N.T., Jury Trial, Vol. III, 3/14/18, at 13-15. That choice of words is, at best, a distinction without a difference. See Merriam-Webster, Merriam-Webster's Collegiate Dictionary, 702 (10th ed.

22

1995) (defining the present-tense verb "make" and past-tense verb "made" as "to put together from components."). In point of fact, the evidence showed that Defendant did more with the device than simply tape it together. He also stripped the cardboard tubes of their wrappings and made use of an additional fuse. Thus, the term "made" is, in light of the evidence, more accurate, as the evidence showed that Defendant did more than simply tape some cardboard tubes together.

Pennsylvania law does not require a trial court to alter its proposed instruction and discussion of the pertinent evidence presented in the case in order to better suit one party's theory of the case. In Betz v. Erie Ins. Exch., 957 A.2d at 1260-61, the appellant claimed that the trial court had erred by failing to rephrase certain language in its charge in reference to an addendum of an insurance policy. The Superior Court rejected the claim.

> A trial court has wide discretion in choosing the language of its instructions to the jury. So long as the resulting expression adequately conveys the required information, we will not deem it grounds for a new trial. In this instance, the alleged flaw in the court's language amounts to no more than its failure to impose Erie's theory of the case. The court did not err in refusing to rephrase the instruction.

Betz, 957 A.2d at 1261.

As in Betz, so in this case, the Court is not required to rephrase an adequate instruction simply to satisfy a defendant's preferred description of his actions. All of the evidence presented indicated that Defendant made the finished device from the fireworks and other components which were found in his residence. That device consisted of five smoke bomb fireworks contained within cardboard tubes. Those tubes had been stripped of their outer wrapping and taped together with an additional fuse. No reasonable juror in this case could conclude that the word "made" was in reference to anything else.

23

Nor is there any reason to think the jury could have possibly been prejudiced by use of the word, "made," as opposed to the phrase, "taped together." Sandusky, 77 A.3d at 667 ("The trial court['s] . . . refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal."). This is especially so when the uncontested evidence showed that Defendant transported, possessed, and used the device, any one of which would have been a sufficient predicate for criminal liability, regardless of whether Defendant made the device in the first instance.

Finally, as stated above, the Court instructed the jury repeatedly that it was the jury's recollection of the evidence, and not the Court's, that was controlling. " 'The jury is presumed to have followed the court's instructions.' " Commonwealth v. Chmiel, 612 Pa. 333, 395, 30 A.3d 1111, 1147 (2011) (quoting Commonwealth v. Flor, 606 Pa. 384, 998 A.2d 606, 632 (2010)). Thus, in charging the jury that it must rely on its own memory of the evidence, and not upon any description of the evidence by the Court, which were given merely to provide context, the Court acted within its discretion and properly instructed the jury in this case.

Because the Court properly instructed the jury, Defendant's claim has no merit and should be denied.

## IV. CONCLUSION

For the reasons stated in the foregoing Opinion, Defendant's claims have no merit and the Court's Sentence Order should be affirmed.

BY THE COURT:

_____
TESLA, JUDGE J.